## THE BLOOMINGTON HOTEL COMPANY

### *v.*

## F. M. GARTHWAIT.

### *Opinion filed June 19, 1907.*

1. MECHANICS' LIENS—*section 7 of the act of 1895 applies to owners as well as creditors.* Section 7 of the Mechanic's Lien act of 1895, providing that no lien shall be enforced against any creditor or encumbrancer unless, within four months after the last payment shall have become due and payable according to the terms of the original contract, the contractor shall bring suit or file a claim for lien, applies to owners as well as creditors and encumbrancers.

2. SAME—*when final payment is due.* Although a building contract specifies the time for completing the work and provides for final settlement twenty days after the work shall have been completed "as covenanted and agreed and the architect shall have certified thereto in writing," yet if the contract further provides that if for certain reasons the contractor is hindered he shall be allowed extra time to finish the contract and that the architect shall decide and fix as to the amount of extra time, final payment is not due until twenty days after the architect's final certificate is given.

3. SAME—*failure of contractor to fully comply with provisions for notice may be waived.* Failure of a contractor to fully comply with a provision of the contract requiring him to immediately give the architect written notices of occurrences hindering his work, in order that he may be allowed extra time to finish the contract, is waived where the contractor is allowed to go on with the work without objection, and no objection to the omission is made at the subsequent meeting of the parties for final settlement of disputes.

4. SAME—*when contractor is not liable for damages for delay.*
A building contractor is not liable in damages for delay in completing the contract, caused by extra work directed to be done by the owner; nor can he be held liable where he is allowed to proceed with the work after the time for its completion, if the owner accepts the work after its completion and makes payments without raising any question as to the delay.

5. SAME—*when claim for liquidated damages cannot be allowed.*
A claim for liquidated damages to the owner of a building for delay in completing the work cannot be allowed in a mechanic's lien proceeding unless the claim has been presented to the architect and allowed by him, where, although the contract provides for liquidated damages in the sum of $20 for each day of delay beyond the time fixed for completion, it also provides that all claims of the contractor for extra time and money or for deductions by the owner shall be fixed by the architect, whose decision shall be binding.

6. SAME.—*when certificate of architect is not final.*    A certificate of the architect stating that the work was *practically* completed is not such a final certificate as binds the parties conclusively except for fraud or mistake, where it appears that the architect himself did not regard it as final, there being more work to be done on the building and claims for deductions to be considered and settled by the architect, and where the architect had no authority to issue a final certificate until the work was fully completed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. GEORGE W. PATTON, Judge, presiding.

This is a bill by appellee, Garthwait, for a mechanic's lien, under the statute of 1895, against the appellant, owner, and Marshall K. Howe, mortgagee, based on a written contract dated October 17, 1901, between appellant, owner, and Garthwait, contractor, providing, among other things, that the contractor should deliver the work "to the owner a complete and finished job * * * on or before the first day of August, 1902;" that in case the contractor fails "to complete the work on the day specified above he will pay to the owner, as liquidated damages, the sum of $20 for each and every day thereafter until said work shall be completed,

(Sundays excepted,) said damages to be retained out of any money due the contractor under this contract or to be recovered at law: *Provided,* that in case the contractor shall be positively hindered by any act or default of the owner or of the architect, or of any other contractor on the work, or by strikes, severe cold weather, * * * the contractor shall be given a just amount of extra time in which to finish this contract; said amount shall be fixed by the architect, and shall be allowed only when the contractor shall have given to the architect written notice of such hindrances, immediately upon their occurrence;" that the owner agrees to pay for said work the sum of $129,000 in current funds, "upon written certificates issued by the architect as the work progresses, * * * as estimated by the architect, and subject to deductions or additions herein provided; to pay the said certificates immediately upon their presentation to him, and make the final settlement for the remainder, and extras, if any, twenty days after the work shall have been completed as covenanted and agreed and the architect shall have certified thereto in writing."  It was further agreed "that no oversight in superintendence by the architect or certificates issued by him shall relieve the contractor from any obligation to do and complete the work as covenanted and agreed;" that the contractor "waives all claim for extra time in which to complete the work, unless demand for the same was made as hereinbefore specified."  It was further agreed "that all disputes as to the true intent and meaning of the drawings and specifications shall be referred to the architect, and that the amount of all claims for allowance of extra time and money by the contractor, or for deduction by the owner, shall be estimated and fixed by the architect, and that his decision shall be final and binding upon both parties hereto."  Agreement was further made that "when the work is completed the contractor shall notify the owner that he is ready for a final settlement, and both the contractor and the owner shall file with the archi-

tect all statements, claims or bills that they may wish to make before the architect renders his final certificate." The contract provided that Robert T. Newberry should be the architect.

Garthwait entered immediately upon the performance of the contract. While the work was in progress extensive and varied changes were made in the plans and specifications and a number of extras were ordered by the owner and by its tenant. November 16, 1901, Garthwait wrote the architect stating that the iron contractor was claiming that on account of the changes made in the plans he was delayed ten days in getting out new drawings, and that still greater delay might be occasioned in getting material from the mill. The letter concluded: "I write * * * to protect myself in case the owners make any claim for delay, should there be any on the building." He wrote again to the architect on August 16, 1902: "Regarding the delay in getting the hotel building finished by August 1, 1902, as per contract, I wish to say that I have been delayed to the extent of thirty-one days on account of extreme cold weather. For this I can give you the exact date and temperature for each day. I have been delayed more or less on account of rainy weather through the months of May, June and July. I have also been delayed to an extent of thirty days on account of changes made in the building by the owners. Kindly allow me an extension of time on account of above delays," etc.

Appellant leased the premises to one F. B. Ewins March 8, 1902, the lease to become operative when the lessee took possession. November 1, 1902, Ewins commenced to move his furniture into the building, and on December 6, 1902, the hotel was open to the public. The architect issued to Garthwait in December, 1902, a certificate for $8000 for the work done and materials furnished under the contract, which certificate was paid by the owner January 16, 1903, and is not now in controversy. On receiving notice of the issuing of this certificate, December 24, 1902, Hanna, the president

of appellant company, wrote Garthwait: "I am in receipt of your favor with certificate for $8000 enclosed. I am somewhat surprised Mr. Newberry should give it to you or that you should ask it without saying anything to any of the parties interested. I am informed that its payment before Mr. Newberry had notified us in writing twenty days would completely invalidate your surety bond for $35,000, which we don't want to do. If you will read the contract you will see that we agree not to pay more than eighty-five per cent until twenty days after notice in writing by the architect that the building is entirely completed. I return the certificate herewith. I hope we may be able to settle all matters up right away, as we are very anxious to close deal. I had rather expected to have Mr. Newberry call for me when he was here last, as I have a number of things I want to bring up."

December 26 Hanna again wrote Garthwait the following: "Yours of the 26th at hand. I have consulted our attorney and he advises me not to pay any more money until the building is accepted by the architect. If I were you I would have Mr. Newberry notify the hotel company, in writing, that the building was completed, and in twenty days from that time we will settle in full with you, or if you will come down about next Tuesday or Wednesday and can suggest any way that we can settle and not invalidate your surety bond, we will have the money and can settle at that time. I don't want you to think that we are doing anything to embarrass you in any way. What I am doing is on the advice of the company's attorney and I can't consistently go against it."

Again, January 1, 1903, Hanna wrote Garthwait: "As I promised, I consulted Mr. Morrissey about the payment of the money, and he advises me the only proper way to do would be to have Newberry make a final settlement with you and give you estimate for balance coming to you. He could date it back so as to have the twenty days expire

about the time you and he settled. * * * We are as anxious to settle up everything as you can be. * * * Hoping this may be satisfactory, I am."

January 5 the architect, Newberry, wrote Hanna as follows: "I expect to be at Bloomington on Wednesday to endeavor to reach a final conclusion on all of the extra accounts, deductions, etc. Will you be so kind as to furnish Mr. Pillsbury a list of all matters which you or the directors claim against Mr. Garthwait, so that they may be taken up at that time? I enclose herewith a written acceptance of the general building from Mr. Garthwait, dated December 6, 1902. I trust this accords with your views."

The acceptance referred to by the architect, dated back as per the suggestion of Hanna's letter, reads as follows:

"*Bloomington Hotel Company:*                          "*December 6, 1902.*

"Gentlemen—Your Illinois Hotel building has been accepted by me to-day as a practical completion of the general contract by Mr. F. M. Garthwait, the general contractor. Acceptance of extras, deductions and changes is reserved from the foregoing for final settlement and adjustment.

Robert T. Newberry, *Architect."*

In accordance with this correspondence, January 8, 1903, the architect, Hanna, Garthwait and Pillsbury (who was the local superintendent of construction that had charge of the work and resided in Bloomington, Newberry residing in Chicago,) met together in Bloomington for the purpose of considering the claims of the respective parties to the contract and adjusting the same. All claims by all parties appear to have been heard by the architect. The evidence is not in entire harmony as to just what took place at this conference, but there is no dispute that all parties thought all matters had been adjusted satisfactorily and harmoniously. Hanna shook hands with Garthwait, and said, in substance, that he was pleased that all the items had been adjusted and was satisfied with the settlement. The weight of the evidence is to the effect that Garthwait, as a part of the settlement, was still to do certain work about the building. As

a result of this meeting the architect gave to Garthwait a certificate, (also sending a copy to appellant,) as follows:

"Bldg. No. 601.

Certificate No. 21.

Contract price.$129,000.00

Extra work...   11,131.15

Total ......$140,131.15

Former certifi-

cates ......  127,600.00

Present certifi-

cate .......   12,531.15

Total ......$140,131.15

Balance $XOX

$12,531.15.—Jan. 12, 1903.

*To Bloomington Hotel Company:*

This is to certify that F. M. Garthwait, contractor for the general work of your building, Bloomington, Ill., is entitled to a payment of twelve thousand five hundred and thirty-one & 15-100 dollars by the terms of contract.

R. T. NEWBERRY, *Architect.*

Remarks:—Steam fitters' acct. not included."

January 24, 1903, L. H. Weldon, secretary of appellant, gave Garthwait a draft for $7000 on the above certificate, making claim at that time that Garthwait had agreed to take stock in the hotel company at the par value of $3000 to apply on any extras for the work. March 24 Weldon tendered Garthwait a certificate for stock for $3000 and check for $295.60. Garthwait refused these offers on both occasions and said that he had never agreed to take any stock.

Appellee's bill in this case and the answer of appellant set up substantially, among other things, the facts stated above, and on the bill and answer the cause was referred to a special master to report the evidence with his findings of the law and facts. After taking several hundred pages of evidence the master found that the architect had passed upon and accepted the work and materials in the building, and in the presence and with the assistance of Hanna and Pillsbury had estimated and fixed the amount of all claims for all extra time and money by the contractor and for deductions by the company and had issued a final certificate to Garthwait for the amount due him; that the hotel company was concluded by said certificate, except in so far as some small items had been overlooked or evident mistakes made in computation; that said oversights amounted to $349.48, and that the account should be stated as follows:

"Due contractor, balance final certificate...............$5,531.15
Steam fitters' account for extras approved by architect..   145.42
Extras ordered direct by owner, approved by architect.   147.70

                              $5,824.27
Less deductions aforesaid (for oversights and mistakes).   349.48

      Balance due contractor February 4, 1903..........$5,474.79"

On exceptions being filed to the report of the special master, the chancellor, after hearing, re-stated the account, as follows:

"Amount due contractor February 4, 1903, as stated by
  the special master ..................................$5,474.79
Additional amount allowed to contractor for extras.....   1,000.00

   Total amount to be allowed contractor..............$6,474.79
Deductions as follows:
  Liquidated damages allowed to hotel com-
    pany for delay in completion of building
    from August 1, 1902, to December 6, 1902,
    109 days at $20 per day................$2,180.00
  For re-varnishing and re-finishing interior
    of building .........................   1,000.00
  For defective cement floors in bath and toilet
    rooms ........... ..................    487.00
  For defective cement floors in kitchen.....    312.00
  For failure to furnish third coat of paint...    453.00
    Total deductions ...................————   4,432.00

Balance due contractor February 4, 1903..............$2,042.79
Interest at five per cent from February 4, 1903, to No-
  vember 11, 1905..................................    282.84

   Total amount due contractor......................$2,325.63"

The decree for lien was accordingly entered for this balance, $2325.63.

Howe, the mortgagee, demurred to the bill upon the ground, first, that no claim for lien was filed in the circuit court; and second, that suit was not brought within four months after the last payment became due, in accordance with the terms of the original contract. This demurrer was sustained by the chancellor.

Appellee prayed an appeal to the Appellate Court from the findings of the circuit court, assigning for error the sustaining of Howe's demurrer to appellee's bill and the finding that the architect did not, on January 8, 1903, decide all matters in dispute between appellant and appellee, Garthwait, except the steam fitters' extras; also the finding that neither the hotel company nor the architect extended the time for the completion of the building; and the order allowing appellant $20 per day for one hundred and nine days as liquidated damages.

The Appellate Court affirmed the judgment of the lower court in sustaining Howe's demurrer, sustained certain findings of the trial court in its decree and overruled other findings, and re-stated the account in accordance with these findings, as follows:

"Amount due contractor February 3, 1903, as stated by the
  special master ....................................$5,474.79

Deductions therefrom as follows:
  For re-varnishing and re-finishing interior of
    building ................... ............$1,000.00
  For defective concrete floors in bath and
    toilet rooms ...........................   487.00
  For failure to furnish third coat of paint....   453.00
    Total deductions ......................———   1,940.00

Balance due contractor February 4, 1903...............$3,534.79
  "To which amount should be added interest thereon at five per cent from February 4, 1903, to date of decree."

The Appellate Court thereupon, in accordance with the views expressed, affirmed the decree of the circuit court in part and reversed it in part and remanded the cause, with directions. Appellant appealed to this court from the judgment of the Appellate Court, appellee, Garthwait, assigning cross-errors.

BARRY & MORRISSEY, for appellant:

Under the statute, suit must be brought or a claim for a lien must be filed within four months after the last payment

shall have become due and payable, according to the terms of the original contract. Liens act, sec. 7.

Under the Mechanic's Lien law of 1874, and also under that of 1887, it was frequently held that the filing of a claim for a lien was a condition precedent, and that it must be filed in order to obtain a lien when the sole defendant was the owner of the premises. *Campbell* v. *Jacobson,* 145 Ill. 389; *McIntosh* v. *Schroeder,* 154 id. 520; *Brady* v. *Lumber Co.* 58 Ill. App. 417.

Where the legislature re-enacts a provision of law in substantially the same language as the original, which has been construed by this court, it will be presumed that such provision was re-enacted together with such construction. *Kelly* v. *Trust Co.* 190 Ill. 401.

Under section 6 of the Liens act, if the contract is in writing no lien can be had unless it provides for the time for completing the work. The law cannot imply any time for completion under the act of 1895. *Freeman* v. *Rinaker,* 185 Ill. 172.

A lien does not attach by virtue of section 6 of said act, when the contract is in writing, unless the time for completion and the time for final payment are expressly set forth in the contract. *Williams* v. *Rittenhouse & Embree Co.* 198 Ill. 602; *VonPlaten* v. *Winterbotham,* 203 id. 198.

If the contract in question fixes a time for completion and final payment, the fact that the time for completion and for final payment was extended by reason of bad weather, changes in plans, etc., would not extend the time allowed by law to the appellee for the commencement of his suit or the filing of a claim for lien. It is expressly held that the extending of the time for final payment does not extend the time for filing claim for lien. *Dawson* v. *Black,* 148 Ill. 484.

The making of an architect's certificate a condition precedent to recovery makes the certificate evidence of a substantial performance but does not prevent a counter-claim for defects. *Loeffler* v. *Froelich,* 35 Hun, 368.

The architect's certificate must comply with the contract before any liability to pay arises. *Barney* v. *Giles,* 120 Ill. 154; *Michaelis* v. *Wolf,* 136 id. 68.

Where the contract required a certificate that the work was fully and completely finished according to the specifications, one stating that the architect was satisfied is not sufficient. *Smith* v. *Briggs,* 3 Denio, 73.

If it be shown that the architect, in making his decision, has disregarded important, clearly established or obvious facts, the presumption is that he did so willfully. *Cook County* v. *Harms,* 108 Ill. 151.

The failure of an architect to object to defective work or materials does not bind the owner. *Monahan* v. *Fitzgerald,* 164 Ill. 525.

Fraud or mistake avoids the effect of the certificate. *Arnold* v. *Bournique,* 144 Ill. 132; *Hennessey* v. *Metzger,* 152 id. 505.

A. E. DeMange, for appellee:

The contract was written and the time limited for completion in the contract was less than one year and the time of final payment was fixed in the contract at less than one year, hence under the express provisions of the contract appellee is entitled to a lien. *Merritt* v. *Crane Co.* 225 Ill. 181; *Sedgwick* v. *Concord Apartment House Co.* 104 Ill. App. 10.

In such case the lien is not lost by subsequent extension of the time of payment. *Chisholm* v. *Williams,* 128 Ill. 115.

The building was completed and accepted December 6, 1902. The final payment became due, by the terms of the contract, twenty days thereafter, December 26, 1902. Appellee's bill was filed April 4, 1903,—less than four months after the last payment became due; hence the contractor is entitled to a lien as against the encumbrancer. 2 Starr & Cur. Stat. sec. 7, p. 2552; *Salem* v. *Lane & Bodley Co.* 189 Ill. 599; *Weber* v. *Bushnell,* 171 id. 587; *McDonald* v. *Patterson & Co.* 186 id. 381.

Under section 7 of the Mechanic's Lien act of 1895 a contractor need not file a claim for a lien, as against subsequent purchasers, creditors or encumbrancers, if he brings suit within four months after the last payment becomes due. *Salem* v. *Lane & Bodley Co.* 189 Ill. 593.

As against the owners, the contractor had two years after the last payment became due within which to commence suit, and as against them the statute does not require the filing of his claim. 2 Starr & Cur. Stat. sec. 9, p. 2556.

Under the contract in this record the architect's final certificate, in the absence of mistake or fraud, is binding and conclusive upon all parties. *Barbee* v. *Findlay*, 221 Ill. 251; *Downey* v. *O'Donnell*, 92 id. 551; *Canal Trustees* v. *Lynch*, 5 Gilm. 521; *McAvoy* v. *Long*, 13 Ill. 147; *McAuley* v. *Carter*, 22 id. 53; *Korf* v. *Lull*, 70 id. 420; *Lull* v. *Korf*, 84 id. 225; *Coey* v. *Lehman*, 79 id. 173; *Taylor* v. *Renn*, 79 id. 181; *Lincoln* v. *Schwartz*, 70 id. 134; *Finney* v. *Condon*, 86 id. 78; *Fowler* v. *Deakman*, 84 id. 130.

Where the contract provides that the work shall be done under the architect's supervision, the architect is the sole judge of the work which he accepts. *Bonnett* v. *Glattfeldt*, 120 Ill. 166.

Neither party can impeach the architect's certificate except for fraud or mistake, and neither party can resort to other evidence of the amount and quality of the work and the amount due the contractor so long as the other party observes and insists upon the contract. *Korf* v. *Lull*, 70 Ill. 420; *Canal Trustees* v. *Lynch*, 5 Gilm. 521; *McAvoy* v. *Long*, 13 Ill. 151; *McAuley* v. *Carter*, 22 id. 57.

The fact that the final certificate given by the architect includes work which is incomplete in unimportant details does not justify a refusal by the owner to pay the amount of the certificate on the ground that the architect fraudulently issued the certificate. *Lincoln* v. *Schwartz*, 70 Ill. 134.

Where the contractor is allowed to proceed with the work after the time fixed for its completion, and upon its comple-

tion the owner accepts the work and makes payments, it amounts to a waiver of the time of performance fixed by the contract. *Taylor* v. *Renn,* 79 Ill. 185; *Foster* v. *McKeown,* 192 id. 347; *Paddock* v. *Stout,* 121 id. 571; *Worrell* v. *Forsyth,* 141 id. 22; *Railroad Co.* v. *Moran,* 187 id. 316; *Evans* v. *Howell,* 211 id. 85; *Weber* v. *Bushnell,* 171 id. 587.

Where the architect inspects and accepts the work and refuses to issue a certificate recovery may be had without it. *Fitzgerald* v. *Benner,* 219 Ill. 485.

Where the delay is caused by extra work and alterations in specifications and contract, directed by the owner or architect, the contractor cannot be held liable therefor, and after such alterations the obligation of the contractor is to finish within a reasonable time. 30 Am. & Eng. Ency. of Law, 1257; *Stock Yards* v. *O'Reilly,* 85 Ill. 546; *Harrison* v. *Trickett,* 57 Ill. App. 517.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant insists in this court, as it did in the Appellate Court, that appellee, Garthwait, is not entitled to a mechanic's lien against it. Appellee, Garthwait, not only insists that he is entitled to a lien against appellant, but that he is also entitled to a lien against the mortgagee, Howe, and assigned as error the ruling of the Appellate and trial courts holding to the contrary.

The Mechanic's Lien law of 1895 was in force at the time this contract was entered into. Section 7 of that act (2 Starr & Cur. Stat. 1896, p. 2552,) reads, in part, as follows: "No contractor shall be allowed to enforce such lien as against or to the prejudice of any other creditor, or encumbrancer, or purchaser, unless, within four months after the last payment shall have become due and payable, according to the terms of the original contract, he shall either bring suit to enforce his lien therefor, or shall file with the clerk of the circuit court of the county in which the build-

227—40

ing, erection or other improvement to be charged with the lien is situated, against the owner, a claim for lien," verified by the affidavit, etc.

It is admitted that no claim for lien was filed with the clerk of the circuit court of McLean county. This bill was filed in the circuit court of that county April 4, 1903. The original contract provided that the work should be completed on the first day of August, 1902. It is not claimed by appellee, Garthwait, that the work was completed until December 6, 1902, and there is a dispute as to whether it was then fully completed. The architect gave what Garthwait claims was a final certificate January 12, 1903. The appellant insists that the bill was not filed "within four months" after the last payment became "due and payable according to the terms of the original contract;" that by the original contract the work was to be completed on August 1, 1902, and the last payment became due twenty days after, or August 21, 1902. The Appellate Court, as well as the trial court, upheld this contention, both as to appellant and as to mortgagee, Howe, but held that the part of section 7 above quoted did not apply to the owner of the premises, and that under section 9 of the Mechanic's Lien law of 1895, (2 Starr & Cur. Stat. 1896, p. 2556,) which reads, in part, as follows: "Such suit shall be commenced * * * within two years after final payment is due according to the terms of the original contract," the lien could be upheld as against appellant, as the petition had been filed "within two years after final payment" was due.

We think the holdings of the Appellate and trial courts on the construction of this statute, both as to the mortgagee, Howe, and appellant, are erroneous. This court in *McIntosh* v. *Schroeder,* 154 Ill. 520, and *Campbell* v. *Jacobson,* 145 id. 389, in passing on the statute of 1874 as finally amended in 1887, held that the provision in section 28 of this law, as to bringing suit or filing claim with the circuit clerk, applied as well to the owner as to creditors, en-

cumbrancers or purchasers. The wording of section 28 of the law of 1874 as amended in 1887, which relates to the question of filing the petition in the circuit court or the claim with the circuit clerk in order to hold the owner, is not substantially different from the wording of section 7 of the law of 1895. The Appellate Court was wrong in holding that, on account of the difference in the language of the two statutes, under the present statute, in order to hold the owner, it was not necessary to file the claim within four months from the time the last payment became due. The reasoning of this court in *Eisendrath Co.* v. *Gebhardt,* 222 Ill. 113, and *Weber* v. *Bushnell,* 171 id. 587, supports a holding contrary to that of the Appellate Court on this point.

We are of the opinion this suit was started "within four months after the last payment" became "due and payable according to the terms of the original contract." While it is true the original contract stated that the work should be completed on the first day of August, 1902, and that the final settlement should be made twenty days after the work should have been completed "as covenanted and agreed," still those parts of the contract must be read in connection with the other portions, which provide (as set out in the foregoing statement of the case) that if, for certain specified reasons, the contractor is hindered he shall be allowed extra time to finish the contract, and that the architect shall decide and fix as to the amount of extra time. This provision as to the extension of time on account of necessary delay is as much a part of the original contract as are the other provisions as to the completion of the contract. A comparison of the provisions of the contract as to time of completion with the contract set out and passed upon in *Weber* v. *Bushnell, supra,* will show that the respective quoted parts of the two contracts are identical in language on this point, reading as follows: "To pay the said certificates immediately on presentation to him, and make the final settlement for the remainder, and extras, if any, twenty

days [forty days in *Weber* v. *Bushnell*] after the work shall
have been completed as covenanted and agreed and the archi-
tect shall have certified thereto in writing." It is true, in
that case the court was passing upon the Mechanic's Lien
law as it existed in 1894 and the section now under con-
sideration was amended somewhat by the law of 1895, but
it is evident from the statement of the case on this point
(page 590, *Weber* v. *Bushnell, supra,*) that the words added
by the law of 1895, "according to the terms of the original
contract," were considered by the court in that case, and it
did not there think there was any necessity to distinguish
on this point between the law as it stood in 1894 and the
amended law of 1895. However that may be, the law of
1895 was passed on squarely by this court on this point in
*Eisendrath Co.* v. *Gebhardt, supra,* and the court there held
that when payments were to be made upon presentation of
the certificate of the architect, and he is authorized to make
certain adjustments and find a balance and give final cer-
tificate, "final payment according to the terms of the original
contract did not become due and payable until the certifi-
cate was given." Under this decision the final payment
would not become due according to the terms of the original
contract until, in accordance with the terms of this con-
tract, "the architect shall have certified thereto in writing."
Giving the most favorable view possible to the contention
of appellant on this question, it must be held that the archi-
tect did not give his final certificate until December 6, 1902.
This bill was filed April 4, 1903, and within four months
from December 6, 1902. The reasoning of this court in *Mc-
Donald* v. *Patterson & Co.* 186 Ill. 381, and *City of Salem*
v. *Lane & Bodley Co.* 189 id. 593, is in harmony with this
conclusion.

What we have said on this subject practically disposes
of the next contention of appellant, that the Appellate Court
was in error in holding that it was not entitled to damages
for the delay in completing the contract. The contract pro-

vides that the amount of claims for the allowance of extra time and work by the contractor or for deductions by the owner shall be fixed by the architect, and that his decision shall be final and binding upon the parties. The letters leading up to the meeting of the architect, Hanna, the president of appellant company, appellee, Garthwait, and the superintendent, Pillsbury, in Bloomington on January 8, 1903, set out in the statement of the case, show plainly that the meeting at that time was for the purpose of settling all the disputed claims. Whatever written notice was required by the contract to be given appellant of this meeting, if it was not fully complied with, was waived by the previous correspondence, the letters of its president, Hanna, as well as by what Hanna said and did the day of the meeting. The great weight of the testimony outside of this correspondence tends to uphold this conclusion. No other inference can be consistently drawn from all the evidence in this record than that on that date it was understood that the building was substantially completed and should be accepted as of December 6, 1902, and that that meeting was held for the final settlement and disposition of all matters in dispute. Hanna, for appellant company, manifestly by these letters wished to have this meeting held for that very purpose. Neither he nor anyone else acting for appellant interposed any objections to meeting that day on the ground that the requirements of the contract as to notice had not been complied with. The representatives of the hotel company, including Hanna, knew at that time, on account of the changes and variations in the specifications, the acceptance of the building and the completion of the contract should be understood to date from December 6, 1902.. No claim was then made for deductions from the contract price on account of the delay. If such claim were to be made, it should, under the terms of the contract, first have been presented to the architect, and his decision on the matter was final. The evidence clearly shows that no claim for the deduction by appellant

for liquidated damages on account of this delay was made by the hotel company until that claim was set forth in its answer to Garthwait's bill of complaint in this proceeding. While the notices of appellee, Garthwait, to the architect, asking for an extension of time, may not be technically in compliance with the contract, still the acquiescence of the appellant, through its representatives, until long after the time of this meeting for final settlement, amounts to a waiver of the notice and precludes it from insisting upon a strict compliance with the contract in this respect. Where the delay is caused by extra work directed by the owner and the architect, the contractor cannot be held liable therefor. Neither can he be held liable when he is allowed to proceed with the work after the time fixed for its completion, where the owner accepts the work after it is completed and makes payment without raising any question as to the delay. Literal compliance with the provisions of a contract is not essential to a recovery. It will be sufficient if there has been an honest and faithful performance of the contract in its material and substantial parts and no willful departure from or omission of the essential points of the contract. To permit appellant to claim liquidated damages under this contract, under the circumstances shown by this record, "would be, in our opinion, contrary to the law and abhorrent to reason and justice." *Hartford Deposit Co.* v. *Calkins,* 186 Ill. 104; *Evans* v. *Howell,* 211 id. 85. See, also, *Foster* v. *McKeown,* 192 Ill. 339; 30 Am. & Eng. Ency. of Law, (2d ed.) p. 1257.

We think the judgment of the Appellate Court on this point in conformity with the finding of the master was in accordance with the law and the facts, and that the chancellor improperly charged appellee, Garthwait, the sum of $2180 as liquidated damages for delay.

If the certificate of January 12, 1903, was understood to be a final certificate covering the entire contract and all the work had been completed at that date, then, under the au-

thorities, this certificate, in the absence of fraud or mistake, would be binding and conclusive upon the parties. (*Barbee* v. *Findlay*, 221 Ill. 251; *Korf* v. *Lull*, 70 id. 420; *McAuley* v. *Carter*, 22 id. 53; *Fowler* v. *Deakman*, 84 id. 130.) Manifestly, from the evidence the building had not been entirely completed at the date of this meeting, January 8, 1903. The men were still at work on it under the direction of Garthwait, and so continued until some time in the following February. The certificate which was given on January 5, 1903, dated back to December 6, 1902, stated that the work was *practically* completed. The architect was without authority to issue a final certificate until the work was fully completed, and neither the certificate of December 6, 1902, nor of January 12, 1903, can be held to be final. While there is some conflict in the evidence as to just what was agreed to on January 8, 1903, as necessary yet to be done by Garthwait and as to what he agreed should be done, it is evident from the testimony of superintendent Pillsbury, as well as from that of the architect, Newberry, that it was agreed at that date that Garthwait should still put some finishing touches on the work. The architect, in a letter to the secretary of appellant, dated January 29, 1903, among other things states: "Relative to the woodwork and painting, I would say that I have repeatedly urged Mr. Pillsbury to insist upon thoroughly first-class work and finish, and while the work is not altogether satisfactory to me, I trust that you will realize that I could hardly be expected to have the woodwork changed after it had been set in place, and that the faults in the painting have already been many times noted to Mr. Pillsbury and yourself by me. I have recommended that an additional coat of varnish be put on the building and the same rubbed down to a dull finish, this to be additional work to that provided in the contract, with the exception of a reasonable allowance to be charged to Mr. Garthwait. The general work of the building has already been accepted by me as a general completion of the contract,

final settlement and adjustment of accounts excepted. The accounts were gone over with care by Mr. Pillsbury and myself with your Mr. Hanna, and in general considered to be reasonable and proper. Of course, if there are items not taken up by us and claims which you have against contractors, I would be glad to consider them and will certainly make proper deductions for the same. I have several times asked for itemized list of all the claims that you desire to make and have made deductions for all items about which I have been instructed. Please furnish me with your list of claims at your earliest convenience." This letter clearly indicates that the architect did not consider that the work was fully completed on January 8, 1903. The certificate of the architect not being understood to be final by him can not here be held final.

The finding of the master on the extra work differs materially from the holdings of the chancellor, and the conclusion of the Appellate Court differs in several particulars from the findings of both the chancellor and the master. The evidence as to the work that was to be done by Garthwait after the statement of January 8, 1903, and of his failure to do all of this and do other work in accordance with the contract, is in hopeless conflict. Any conclusion on this record as to some of the items is necessarily, therefore, not free from doubt. We have gone over with care not only the findings of the master, the chancellor and the Appellate Court on these questions, but the briefs, abstracts and the record itself. We cannot agree with the contention of appellant that the $1000 mentioned in the "general items" for decorating was improperly allowed by the master and the Appellate Court. Appellant denies that this $1000 was taken into consideration by the contractor in making his bid for changing the decorating of the walls from water color to paint, or that his bid for $360 for the work and material was over and above $1000 for decorations in the general items. Appellee, Garthwait, testified that his bid did so con-

sider these items, and we find nothing in the evidence to contradict his testimony.   The architect was not asked about it.   The testimony of the painter contractor, H. T. Kummer, called by appellant, would indicate that the sum to be paid for changing from water color to paint should be as much as $1360.   The Appellate Court was justified, also, in finding that the $312 deducted by the chancellor for the cracks in the concrete floor of the kitchen should not be allowed, as this repairing was caused by the floor being torn up for independent plumbing by contractors after it had been properly laid by appellee.   The finding of the chancellor for $455 against appellee for failing to furnish a third coat of paint, and $1000 for poor finishing of the interior part of the building, approved by the Appellate Court, was a proper deduction as against him.   There is evidence also tending to uphold the Appellate Court and chancellor as to the item for $487 charged against Garthwait for defective floors in both toilet rooms, although on these three last items the evidence, as the Appellate Court said, is in "hopeless and inexplicable conflict."   On the entire record we think the finding of the Appellate Court as to the statement of the amount in favor of appellee, Garthwait, and the amount that should be allowed him as a lien, is in accord with the law and the facts.

The judgment of the Appellate Court against appellant for $3534.79 due appellee, Garthwait, February 4, 1903, with interest from that date, will therefore be affirmed, but the judgment of that court holding correct the ruling of the trial court sustaining the demurrer of mortgagee, Howe, will be reversed and the cause remanded to the circuit court as to said Howe, with directions for further proceedings in conformity with this opinion.

*Reversed in part and remanded.*