Edward J. Ahmer, Appellee, v. George E. Peters and Frances M. Peters, Appellants.

Gen. No. 47,323.

First District, Third Division.

April 9, 1958.

Supplemental opinion, May 9, 1958.

Rehearing denied May 9, 1958.

Released for publication May 9, 1958.

Hoover, Scheele and McGrath, of Chicago (John F. Hoover, of counsel) for defendants-appellants.

Samuel Wodika, of Chicago, for plaintiff-appellee.

JUSTICE BRYANT delivered the opinion of the court.

This action was brought to foreclose a claim for a mechanic's lien for balance of contract price for the construction of a residence, and certain extras.

The defendants filed their answer which alleged, among other things, that plaintiff had been discharged by reason of his failure to complete the work in the time required under the contract, and for the further

reason that he imposed as a condition to the continuation of the work, payment of certain alleged extras, contained in his complaint. The defendants admit that the building was partially completed but deny that there was substantial compliance with the contract. They claim credit for the uncompleted portions of the contract and filed a counterclaim asking an accounting and setting forth certain alleged damages due to the delay in the completion of the building. Plaintiff filed his reply to the answer and counterclaim and denied that he had breached his contract and that the counterclaimants were entitled to any damages for delay. The principal issues of the case were: (1) whether the plaintiff's failure to complete the contract in accordance with the time limitations imposed therein was a violation of the contract or whether they had been waived because of delays that had been incurred at the request of the defendants; (2) whether the defendants themselves had breached the contract by failure to make payments as the work progressed, as provided therein; (3) whether there had been substantial completion and performance by the plaintiff of his contract to construct a residence for the defendants before the defendants took any steps to terminate it; and (4) specific questions of fact relating to the extras claimed by plaintiff, the set-offs or payments claimed by the defendants, and the damages due to delay claimed by the defendants in their counterclaim.

This matter was referred to a master in chancery, who took the testimony herein. At the end of the plaintiff's case in chief, the defendants made a motion for a finding in their favor. The master prepared his report based upon the evidence so far introduced, and recommended that the motion be denied. Hearings were had before the court and the motion was denied and the matter re-referred to the master in chancery. Upon this re-reference much testimony was taken relating to the defense to the mechanic's lien claimed by

115

the plaintiff, relating to the defendants' defense to the extras claimed by plaintiff, and the set-off to which the defendants claimed they were entitled and to the damages resulting from delay which the defendants claimed in their countercomplaint. At the end of the taking of the testimony the master again compiled his report, this time based upon all the evidence introduced before him. Objections were filed to the master's report and hearings were had before the court. After the hearings the court entered its decree, in the main sustaining the position of the master in regard to his report, but modifying it in regard to certain particulars. It is from this decree, based upon the master's report, modified by the court after careful consideration, that this appeal is taken.

The contract for the construction of the house was signed on May 21, 1953. Although the property was subdivided at that time, it was in actuality raw land: that is, there was no sewer or water in the street, no sewer stubs or water stubs to the property described in the contract, and the street was not improved in any manner. The contract provided that the house was to be completed within six months from the date excavation was begun. Immediately after the signing of the contract the defendants requested plaintiff not to proceed with the work, as they wanted to be certain about the underground improvements. They attended several meetings of the village board at Arlington Heights, and at least on one occasion were accompanied by the plaintiff. Negotiations were being carried on with the village authorities in regard to the installation of sewers, water mains and stubs. Finally, about the middle of August, 1953, the defendants requested the plaintiff to proceed with the work. He immediately made arrangements and his excavator stripped back the black soil off the lot so it could be used for future coverage of the fill necessary to be placed around the house. He had only done that when, early

116

in September, he was requested by the defendants not to proceed any further. About the middle of September the plaintiff was again advised by the defendants to go ahead, and on or about October 6, 1953 the excavation for the foundation was commenced, and on October 12, 1953 work on the foundation itself had started. The house was a brick veneer building. After the completion of the foundation the carpentry work progressed in a normal sequence, with the result that the house was under roof in due course.

There was in the record much evidence of the difficulty in delivering material to the property, as the street was impassable by virtue of the construction therein and the materials had to be delivered from the rear and many of the trucks delivering materials got stuck in the mud. In the early part of January, 1954, the defendants demanded that the plaintiff proceed at once with the mason work, consisting primarily of the brick veneer on the outside of the house, and that was done at the special instance and request of the defendants at that time. In February, 1954 the sewer and water lines were installed in the street, but no stubs leading to the defendants' property were installed at that time. It later became necessary for the plaintiff to connect the sewer and the water by trenching in the street to the main water and sewer mains to make the connection. The construction of the house proceeded with numerous delays, caused in part, at least, by the defendants. There is evidence that the defendants were dissatisfied with the location of the registers in the hot air heating system provided for in the specifications, and that resulted in changing the system to a hot water system and the taking out of duct work already installed, at an additional cost. There is evidence that one set of windows in the kitchen was located three times and new frames were made in order to accommodate the desires and tastes of the defendants, all of which did not correspond with

117

the plans and specifications agreed to in the contract. There is also evidence that a change was made in the level of the breezeway between the house and the garage differing from the plans, at the instance and request of the defendants. Six months from the excavation passed and no cancellation of the contract was attempted.

In August 1954 the plaintiff made a report of work done, including numerous extras relating to the windows, heating plant, breezeway and the trenching in the street, and the defendants did not authorize the payments to be made in accordance with the provisions of the contract. The plaintiff was not paid on the portion of his work accomplished to that date in accordance with his report. The plaintiff thereupon ceased work on the premises and on October 1, 1954 the defendants forcibly entered the premises, took possession thereof and changed the locks on the doors so that plaintiff could not enter and do any further work. The plaintiff allowed the defendants credit for the uncompleted items in the house at the time possession by defendants was taken on October 1st.

In the case of Walsh v. North American Cold Storage Co., 260 Ill. 322, at p. 329, the court said:

"Mere delay in the performance of a building contract will not defeat the right of the contractor to collect the contract price, and delay caused by the owner excuses the contractor so far as the time of performance is concerned."

In Bloomington Hotel Co. v. Garthwait, 227 Ill. 613, at p. 630, the court said:

"Where the delay is caused by extra work directed by the owner and the architect, the contractor cannot be held liable therefor. Neither can he be held liable when he is allowed to proceed with the work after the time fixed for its completion, where the owner accepts

the work after it is completed and makes payment without raising any question as to the delay. Literal compliance with the provisions of a contract is not essential to a recovery. It will be sufficient if there has been an honest and faithful performance of the contract in its material and substantial parts and no willful departure from or omission of the essential points of the contract. To permit appellant to claim liquidated damages under this contract, under the circumstances shown by this record, 'would be, in our opinion, contrary to the law and abhorent to reason and justice.' Hartford Deposit Co. v. Calkins, 186 Ill. 104; Evans v. Howell, 211 id. 85. See, also, Foster v. McKeown, 192 Ill. 339; 30 Am. & Eng. Ency. of Law, (2d ed.) p. 1257."

The instant case differs somewhat from the case last cited, in that the defendants here did not make payment without raising any question. It is true, however, that they accepted the work in so far as it was completed, and locked the plaintiff out of the house where his work had been done and his material furnished. This question of delay is fully discussed in the case of Edward Edinger Co. v. Willis, 260 Ill. App. 106, 126, where the court said: "Where the delay is caused by extra work or changes ordered by the architect, claims of the owner for damages for delays will not be allowed." In the instant case it is clear that some of the delays, if not all of them, were at the direct request of the defendants, and other delays were necessarily caused by the changes in plans requested by the defendants. It would therefore follow that the delay in the completion beyond the six month period after the excavation, was not a breach of the contract on the part of the plaintiff, and that the contract was substantially performed in so far as it was possible to do so until the time the defendants failed to make the payments in accordance with the provisions thereof.

It might be noted that the delay from May to October, directly at the request of the defendants, put the construction of the house in the least advantageous part of the working year and one where there would of necessity be more delay in carrying forward the work expeditiously. The decision of the court, holding that the defendants were responsible for the delay and that they first breached the contract, was in accordance with the law.

Therefore, the order of the court dismissing the counterclaim based upon the alleged breach of contract by the plaintiff because of delay, is in accordance with the law and with the findings of the master and of the court, and no especial consideration need be given to any of the items in the counterclaim.

Consideration of paragraph 16 of the decree indicates certain errors in computation, as follows: (1) Finding 8 of the decree sets forth the amount paid by the defendants on account of the contract as being $14,431.50. Finding 4 of the decree sets forth the amount due under the contract as $22,000. When the amount paid is subtracted from the amount due, the amount remaining due to the plaintiff under the contract is $7,568.50, instead of $8,568.50. (2) The extras claimed by the plaintiff total $2,766.40, according to Finding 12 of the decree. Both the master and the court apparently agree that the sum of $374.11, for supervision in regard to extra labor, was not a proper charge against the defendants. Finding 12 of the decree indicates, in regard to two other contested matters, that the charge of $758.36 for masonry was a correct extra to be allowed, while the charge of $577.77, designated plumbing, which was for services done in the street—bringing the sewer and the water to the lot line, was an improper charge. While the record indicates that upon the hearing of the master's report certain changes were made, the oral findings of the court at that time are not preserved in the rec-

120

ord, and apparently the findings in the decree do not reflect them. The plaintiff's brief indicates that the two items the plaintiff claimed for extras, which were denied by the court, were the overhead on extra labor of $374.11 and the claim for extra charge for masonry of $758.36. That would result in a reversal of the master's findings in regard to the masonry and plumbing charge as set forth in Finding 12 of the decree. That reversal by the trial court would be in accordance with the evidence and the law in the case, in our opinion, and only upon the basis of that reversal could the item in paragraph 16 of the decree—"Extras due to plaintiff, $1,643.93," be correct. That of course would change the total of the amounts due plaintiff to $9,212.43 instead of $10,212.43. (3) The deduction from the amount due the plaintiff of the credit to the defendants contained in paragraph 16, indicates an error of $22.00 in computation. (4) These errors result in fixing the amount of the mechanic's lien at $2,757.42, and that is the amount for which the plaintiff is entitled to a mechanic's lien, without consideration of the questions of interest and costs. The findings in the decree should be in accordance with the decision of the court and support the computation of the amount found due as a mechanic's lien.

██ There remains for consideration the questions of interest and costs as fixed by the decree. The right to interest in mechanic's liens matters is purely statutory. In the case of Edward Edinger Co. v. Willis, 260 Ill. App. 106, at p. 128, the court said: "The right to interest on mechanic lien demands is controlled by the Mechanics' Liens Act and not by the statute on interest, and the claimant is entitled to interest at the legal rate from the time the money is due under the contract." Section 1, chapter 82, Ill. Rev. Stats. 1957, after setting forth the details of what may be subject for a mechanic's lien, says, "and interest from the date the same is due." The decree

fixes the date for the beginning of the running of interest, from October 1, 1954, which is the date when the defendants took over the premises with the improvements thereon and changed the locks on the doors and locked the plaintiff out. The money was certainly due on that date and the court did not err in selecting that date as the date from which interest ran on the mechanic's lien allowed by the decree.

 Section 17, chapter 82, Ill. Rev. Stats. 1957, in regard to Mechanics' Liens, says: "The cost of proceedings as between all parties to the suit, shall be taxed equitably against the losing parties . . . ." The losing parties in this proceeding are the defendants. They refused to make payments for extra work which had been done for their benefit, at their instance and request; they held up the payments of the amounts due the plaintiff and he was compelled to file a mechanic's lien suit to protect his interest; and their counterclaim was dismissed. It cannot be said that the decree which fixed the master's fees and taxed them as costs and directed the payment of costs by the defendants in this litigation, is either contrary to the statute or an abuse of discretion.

The decree is reversed and the cause remanded with directions to correct the findings of the decree to conform to the decision of the court and to enter a decree in accordance with the views herein expressed.

*Decree reversed and remanded with directions.*

BURKE, P. J. and FRIEND, J., concur.

SUPPLEMENTAL OPINION ON REHEARING.

As the breakdown of payments made upon the contract was not included in the decree and has been first

explained in this petition for rehearing, causing an error in crediting twice the sum of $1,000—being the down-payment on the contract, the amount found due in the original opinion is increased $1,000 to the sum of $3,757.42, and the opinion is modified accordingly.

Petition for rehearing denied and opinion and judgment of this court modified.

BURKE and FRIEND, JJ., concur.