POSNER, Circuit Judge,
dissenting.
Balagiannis sued Mavrakis and others and the parties settled, agreeing that Mav-rakis would pay $1,225 million to Balagian-nis, who in exchange would release all his claims against Mavrakis and his wife. There were several claims, and it is uncon-troverted that Balagiannis timely settled all but one — a complaint seemingly both criminal and civil in nature that he had filed with Greek prosecutorial authorities, who in response to .the complaint had instituted an investigation. (Although both parties, though ethnically Greek, are American citizens, the fraud alleged by Balagiannis arose from transactions involving the stock of a casino located in Greece.) In '2012, after having paid $300,000 of the $1,225 million that he owed Balagiannis, Mavrakis refused to pay the rest on the ground that Balagiannis had not withdrawn the Greek complaint as promised. Balagiannis had written a letter to the Greek authorities in March 2012 that he says withdrew the complaint. Actually the letter just asked the authorities to expedite their investigation, which is the opposite of a request to dismiss. But Balagian-nis may have thought (and for all we know may have been thinking correctly) that only when the investigation was complete would the criminal complaint be dismissed. He also says his Greek lawyer told him the letter would bring about the withdrawal of the Greek proceeding against the Mávrak-ises.
In 2013 Balagiannis brought the suit that is before us against Mavrakis for the $925,000 that remained of Balagiannis’s $1,225 million contract claim. The following year, Mavrakis having moved to dismiss the suit for failure to state a claim, Balagiannis filed in the district court a statement that his (new) Greek lawyer had just submitted to the Greek authorities unequivocally requesting termination of the Greek investigation of Mavrakis and his wife. The letter did not request termination of the other defendants, but said 'only that on the basis of additional information that Balagiannis had recently obtained he had concluded that Mavrakis and his wife “have no involvement and connection to the felonies of embezzlement, fraud and forgery committed against me” and therefore “I do not wish to legally sue Theodore Mavrakis and [his wife] and I will not attend as plaintiff against them,” as distinct from four other defendants against “whom I wish to proceed with the prosecution to [sic] against them and [as to them] I will attend as the plaintiff.”
For Balagiannis to prevail in his breach of contract^ suit against Mavrakis he had only to show that he had substantially performed his end of the bargain. George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co., 32 Ill.App.3d 249, 336 N.E.2d 185, 189 (1975), citing Christopher v. West, 409 Ill. 131, 98 N.E.2d 722, 725 (1951); W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill.App.3d 752, 286 Ill.Dec. *743 734, 814 N.E.2d 960, 967 (2004). The district judge nevertheless dismissed Bala-giannis’s suit with prejudice for failure to state a claim, primarily on the ground that the second letter had come too late, having been filed with the court more than four months after the complaint had been filed. The judge also cited a Greek source, cited by Mavrakis, for the proposition that as long as the Greek investigation continued against the four other defendants, it could not be terminated against any of the defendants.
Dismissal with prejudice was improper with the suit at such an early stage, see Fed.R.Civ.P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); cf. General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir.1997), given the abundance of factual issues raised by the parties’ submissions to the district court— those issues could not be sensibly resolved without proceedings that the judge impatiently cut off. Whether Greek law would allow the investigation to be terminated against fewer than all the persons being investigated was an especially critical issue and surely merited the judge’s consideration, which it did not receive. Another ignored issue of potential consequence was whether Balagiannis’s first letter to the Greek authorities, despite its literal meaning — a meaning that may however have been the product of an imperfect translation from Greek into English — was a bona fide effort to terminate the criminal investigation of the Mavrakises. (The statement in the majority opinion that “the district court did not need the benefit of an expert in Greek law to reach the conclusion that a letter which fails to mention anything about withdrawing a party from the case will not result in that party being withdrawn from the case” could be thought to reflect a certain nalveté concerning the potential loss of meaning in translations.) And if not, the next issue requiring consideration was whether the second letter was such an effort, even though it reserved the right to urge that the criminal investigation of the Mavrakises’ codefendants proceed. That issue too the judge ignored.
Still another ignored issue of consequence was whether, assuming that either one or both of the letters was a bona fide effort to call off the Greek investigatory hounds, the effort amounted to substantial performance by Balagiannis of his obligations under the settlement agreement. He did not promise in the settlement agreement to deliver “peace of mind that no criminal prosecution in Greece would be forthcoming,” as the majority puts it; he didn’t agree to become an insurer. But he agreed “to withdraw the Complaint he has filed against Mavrakis and [his wife] in the Greek Action.”
The phrase “withdraw the Complaint” could mean either “terminate prosecution of the complaint” or “ask the Greek authorities not to prosecute the complaint.” If Greek law doesn’t allow a private complainant to terminate the prosecution of a complaint against fewer than all the defendants, then a plausible interpretation of “withdraw the Complaint” is that Bala-giannis was required only to tell the Greek authorities that he didn’t want Mavrakis and his wife prosecuted — for he could not block the prosecution but could only ask that it be terminated. This interpretation would require Balagiannis to do only what Greek law allowed him to do. To interpret the contract to require him to do something the law didn’t allow him to do, such as withdraw the complaint against all the defendants, would signify a mutual mistake by the parties concerning the applicable Greek law, see Schaefer v. Wunderle, 154 Ill. 577, 39 N.E. 623, 627 (1895); 27 Williston on Contracts § 70:134 (4th ed., Westlaw database updated May 2015); Restatement of Restitution § 55, comment c; *744 Eclavea et al., 12 Ill. Law and Practice, Contracts § 69 (Westlaw database updated May 2015), by agreeing to do something the law forbade. If there was no mistake, Balagiannis wouldn’t have to rescind the contract for relief, as the majority suggests, because he had done all he could do — his performance though it might prove ineffectual had been substantial.
Further supporting this interpretation is Mavrakis’s promise in the settlement agreement “to provide reasonable cooperation in connection with Balagiannis’ claims against the remaining parties in the Greek Action.” Since Balagiannis is not asking that his Greek complaint be dropped against them as well as against the Mav-rakises, he did not harm Mavrakis and so did not breach his contract; “reasonable cooperation” would require Mavrakis to accept Balagiannis’s interpretation of Greek law as not requiring Balagiannis to obtain the dismissal of all the defendants in order to obtain the dismissal of just the two Mavrakises.
Balagiannis’s lawyer told us at oral argument that his client would not resist being ordered to return some portion of the damages to which Balagiannis would be entitled had he managed to withdraw the Greek complaint early on. The concession appears in amplified form in his brief, which states that “Balagiannis and Reserve [his company, a coplaintiff] are entitled to maintain their claim against Ted [Mavrakis] for his failure to pay the $925,000 that remains due under the Settlement Agreement, subject to any damages that Ted [Mavrakis] can prove that were caused by Balagiannis failing to timely withdraw the claims against Ted and his wife in the Greek Complaint” (emphasis added).
The majority opinion states that the delay makes Balagiannis’s second letter ineffectual, but doesn’t explain why damages cannot remedy any harm that the Mavrak-ises suffered from the delay. The Illinois courts have ruled that “mere delay in the performance of a building contract will not defeat the right of the contractor to collect the contract price.” Ahmer v. Peters, 17 Ill.App.2d 113, 149 N.E.2d 503, 506 (1958), quoting Walsh v. North American Cold Storage Co., 260 Ill. 322, 103 N.E. 185, 188 (1913); see also Israel v. National Canada Corp., 276 Ill.App.3d 454, 213 Ill.Dec. 163, 658 N.E.2d 1184, 1190 (1995). Why should the result be any different in this case? The Mavrakises haven’t been prosecuted yet, so even a delayed withdrawal may spare them any consequences from Bala-giannis’s delay in endeavoring, in his second letter, to make clear his desire that the Greek authorities terminate their investigation of the Mavrakises.
The result of a trial — even perhaps of summary judgment proceedings — might well be a finding that the Greek investigation is dead in the water. Indeed, since the Greek authorities have not brought the Mavrakises to trial in the six years since Balagiannis filed his Greek claims, or so far as appears done anything else to suggest a live investigation and expectation of an eventual trial, it is unlikely — it may in fact be out of the question — that the couple will' ever be prosecuted in Greece. (Would Greece even request their extradition, and if so would the United States honor the request?) To determine that possibility would require evidence from experts on Greek criminal procedure who— whether Greek or American — are knowledgeable about the extraordinary current strains on the Greek government as a result of Greece’s dire financial straits, which have produced a bitter conflict between that government and the European Union’s financial authorities plus the nation’s numerous importunate creditors.
If indeed the investigation will not result in a prosecution, Balagiannis is entitled to *745 the promised $925,000 minus any damages that delay has imposed on the Mavrakises. Should it be impossible to determine the fate of the investigation or to assess damages that the investigation’s continued existence, limbo-like though it is, is imposing on the Mavrakises, an alternative remedy might be to require them to place the $925,000 that they may ultimately be determined to pay Balagiannis in escrow (where it would earn interest) for a period of say three years. If at any time during that period the investigation was definitely closed, the money, • including any accrued interest, would go to Balagiannis. Otherwise it would stay with the Mavrakises.
All that is clear at this stage is that the suit has been dismissed prematurely and therefore that the dismissal should be reversed and the case remanded to the district court for evidentiary proceedings.
I want in closing to remark a general issue of federal practice that this case illustrates. Recall that the district judge’s main reason (mysteriously ignored in the majority opinion) for dismissing Balagian-nis’s suit was his four-month delay in filing the second letter. The second letter is crucial to his case. I find myself increasingly uncomfortable with basing dismissals with prejudice on harmless procedural bobbles. The only argument in favor of such summary justice that I can imagine is that by punishing parties for their lawyers’ mistake we improve the quality of the bar; the lawyers who disserve their clients attract fewer new clients and eventually per-' haps are forced to leave the practice — an example of the positive effect of competition on the quality of goods and services that a market provides. But while this is plausible in theory, I have to say that in more than 33 years as a federal court of appeals judge I have not noted any improvement in the average quality of the lawyers who appear before us. I find it difficult to believe that punishing Balagian-nis and his lawyer by in effect a “fine” of $925,000 will promote the quality of legal representation in the courts of this circuit.