Edward H. Martin, as Administrator of the Estate of Anton H. Luckenbach, Deceased. Appeal of James F. Hutchison et al., Appellants, v. Bankers Life Company, Appellee.

Gen. No. 38,019.

Opinion filed December 27, 1935.

OSSIAN CAMERON and EDWARD H. S. MARTIN, of Chicago, for appellants.

WINSTON, STRAWN & SHAW, of Chicago, for appellee; JOHN D. BLACK, WALTER H. JACOBS and GRIER D. PATTERSON, all of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal by a number of plaintiffs from judgments of the superior court sustaining demurrers of the defendant to the declarations of the said various plaintiffs. The latter electing to stand on their said declarations the said suits were dismissed at plaintiffs' costs, from which said orders and judgments this appeal is taken.

The plaintiffs filed their various declarations alleging anticipatory breaches of certain contracts of insurance by the Bankers Life Company of Iowa, a life insurance company. To these declarations general and special demurrers were filed in the court below and upon argument the same were sustained, from which an appeal was taken to the Supreme Court on the ground that a constitutional question was involved; that the policies issued by defendant were in violation of the provisions of the Constitution of the United States as well as the Constitutions of Iowa and Illinois. The 17 cases were consolidated for the purposes of appeal. The appeal to the Supreme Court was dis-

posed of by the decision in *Martin v. Bankers Life Co.,* 358 Ill. 388, and the causes transferred to this court.

The record in this case discloses not one cause of action, but 17 different causes of action by 17 different persons in which the allegations of facts and the claimed application of law in the various declarations are different. An attempt was made to consolidate all of these cases by an order entered in the court below, thereby making it very difficult for a reviewing court to correctly assemble the facts and equally difficult to write one opinion disposing of the entire number of cases.

Each of the plaintiffs alleges that he was the holder of a certificate of membership in the Bankers Life Company, which agreed to pay on the death of the plaintiff to the beneficiary the principal sum of money mentioned in the certificate. The declaration further shows that the application for the said certificate, or certificate of membership together with the articles of incorporation and the by-laws of the association, shall form the contract between the applicant and the association. The articles of incorporation and the by-laws are pleaded in each case.

It further appears from the declarations, so far as we can find in the abstract, that before the beginning of the suit the defendant, the Bankers Life Company, made increased assessments against the plaintiffs and notified plaintiffs to pay these increased assessments in order to maintain their memberships in force. The various declarations contain different allegations as to what was done by the respective plaintiffs after this alleged wrongful assessment was made, some paying under protest; some tendering the amount originally specified in the policies and one of them, Hutchison, doing neither. Each declaration alleges that by reason of the wrongful assessment, the defendant has breached its contract with the plaintiff and therefore, entitled to recover damages.

It appears that the defendant in this case by its articles of incorporation was constituted as a body corporate for benevolent purposes, pursuant to the statute of Iowa in such case made and provided. Article II of said Articles of Incorporation provides: "The creation of a fund by making mutual pledges and giving valid obligations of the members to each other for their own insurance from loss by death, etc."

It further appears that the defendant desired to change from a mutual assessment company into that of a level premium or old line company. After this was done the right to make this change was challenged by holders of certain life insurance contracts. *Wall v. Bankers Life Co. of Des Moines,* 208 Iowa 1053, 223 N. W. 257, which was a suit in equity, filed against that company, asking that the defendant company be enjoined from making assessments alleged to be in violation of its contracts, and second, required to make a full and complete account of its funds accumulated for the use and benefit of the plaintiffs. The District Court in which the suit was brought denied the injunction and the accounting, and the Supreme Court of Iowa affirmed this action and in its opinion reviewed the right of the company under the law to change its character and make use of its funds for the purposes and in the manner in which the plaintiffs in the cases at bar complain. On page 261, the court in the *Wall* case said:

"Legislative enactments previously quoted intervened for the benefit of appellee in the case at bar, for by such enabling acts it was authorized to transform itself from an assessment company into that of a legal reserve or level premium entity. Previous to this legislation, appellee was prohibited by statute from being anything but an assessment corporation." We are inclined to believe that the decision in this case would be controlling in the matter of these contracts. The

contracts were executed in the State of Iowa and the decision of the Supreme Court of Iowa as to what the law of that State is in relation thereto, would be controlling as to all similar contracts.

We think the law relating to anticipatory breaches of contracts is quite well settled as set forth in *Lake Shore & Michigan Southern Ry. Co. v. Richards,* 152 Ill. 59, wherein the court at page 80 says:

"It is well settled that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover, under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. In the latter case the contract would be continued in force for that purpose. Where, however, the injured party elects to keep the contract in force for the purpose of recovering future profits, treating the contract as repudiated by the other party, in order to such recovery the plaintiff must allege and prove performance upon his part, or a legal excuse for non-performance. As said by Lord Coleridge in *Freeth, et al. v. Burr,* (L. R.) 9 C. P. 208: 'In cases of this sort, where the question is whether the one party is set free by the action of the other, the real matter for consideration is, whether the acts or conduct of the one do or do not amount to an intimation of an intention to abandon and altogether refuse performance of the contract.' His lordship then adds: 'I say this in order to explain the ground upon which I think the decisions in these cases must rest. There

has been some conflict among them. But I think it may be taken that the fair result of them is as I have stated, viz., that the true question is, whether the acts and conduct of the party evince an intention no longer to be bound by the contract.' ''

As was said in a well considered case, viz., *Indiana Life Endowment Co. v. Carnithan,* 62 Ind. App. 567, 109 N. E. 851, 854:

''The authorities also emphasize the fact that one party to such a contract may not by himself rescind it, and that a repudiation by him alone, although absolute and sufficient to justify the other party in treating it as an anticipatory breach, does not necessitate such action by the latter party, but the latter party may elect to stand upon his contract and perform, or offer to perform, all the conditions thereof required of him, and then when the day of performance arrives, proceed to enforce his contract. It seems that in cases like the one under consideration, where an insurer repudiates its contract and denies liability thereunder, and refuses to receive premiums, the policy holder may pursue either of three courses, viz.:

'' 'First, he may elect to consider the policy at an end and recover the equitable and just value of the policy; second, he may institute proceedings to have the policy adjudged to be in force in which case the question of forfeiture may be determined; third, he may tender the premiums, and, if acceptance is refused, wait until the policy by its terms become payable, and then test the forfeiture in a proper action on the policy.' *Day v. Connecticut, etc. Ins. Co.,* 45 Conn. 480, 29 Am. Rep. 693; *Metropolitan L. Ins. Co. v. McCormick,* 19 Ind. App. 49, 56, 49 N. E. 44, 65 Am. St. Rep. 392, and cases cited.

''In such cases, however, the policy holder may not treat his policy as in force and effect and still preserve his right to sue for damages for its breach. Upon this subject the Supreme Court of the United States, in the

case of *Roehm v. Horst, supra,* 178 U. S. 13, 20 Sup. Ct. 785, 44 L. Ed. 958, quotes with approval the following language of Lord Justice Bowen:

" 'We have therefore to consider upon what principles and under what circumstances it must be held that a promisee who finds himself confronted with a declaration of intention by the promisor not to carry out the contract when the time for performance arrives may treat the contract as broken, and sue for the breach thereof. It would seem on principle that the declaration of such intention by the promisor is not in itself, unless acted on by the promisee, a breach of the contract, and that it only becomes a breach when it is converted by force of what follows it into a wrongful renunciation of the contract. Its real operation appears to be to give the promisee the right of electing either to treat the declaration as *brutum fulmen* (a harmless thunderbolt—a noisy, but ineffectual, menace), and, holding fast to the contract, to wait till the time for its performance has arrived, or to act upon it and treat it as a final assertion by the promisor that he is no longer bound by the contract, and a wrongful renunciation of the contractual relation into which he has entered. But such declaration *only becomes a wrongful act if the promisee elects to treat it as such. If he does so elect it becomes a breach of the contract and he can recover upon it as such.*' "

In some of the declarations that were filed in these cases it appears that the plaintiffs have taken different positions. They allege that they have either paid the premiums without knowledge of the facts, or have tendered the premium in the original amount and the same has been refused. In either event they have elected to keep the policies in force.

It does not appear from the allegations in the declarations that the increase in premium rate would be destructive of the entire contract.

In *Barker & Stewart Lumber Co. v. Edward Hines Lumber Co.,* 137 Fed. 300, at p. 309, the court says:

"(4) If the renunciation of part performance does not go to the whole consideration (full performance not being rendered impossible), and the renunciation was not intended to excuse performance of other provisions, *and does not render unattainable the main object of the contract, no breach occurs, and no right of action arises."* *Selby v. Hutchinson,* 9 Ill. 319; *Weintz v. Hafner,* 78 Ill. 27.

The notice by the insurance company to the plaintiffs that unless they paid the increased premiums the policies would cease to be in full force and effect within a stated time in the future was, as said by the United States Supreme Court in the case of *Roehm v. Horst,* 178 U. S. 1, at page 13: "But such declaration only becomes a wrongful act if the promisee elects to treat it as such."

In some of the declarations filed in these cases they set forth that they have elected to treat the statements of the insurance company as a final cancellation of the contract of insurance except in the declarations of James F. Hutchison, which charges the actions of the defendant company in violation of the Constitution of the United States and of Iowa and Illinois. This contention was disposed of by the Supreme Court as heretofore stated in the case of *Martin v. Bankers Life Co.,* 358 Ill. 388. In the instant cases, the time for performance of the contract by the defendant is not until after the death of the insured providing the contract is kept in full force and effect in accordance with its terms by the payment of the premiums. If, however, as they have alleged here, the defendant wrongfully breaches the contracts and does not intend to carry them out, then the plaintiffs do not have to wait until the death occurs, but may notify the defendant of their election to rescind the contract. They may anticipate the date

fixed by the contract for performance according to its terms and commence suit immediately to recover their damages, if any.

As heretofore shown in the *Lake Shore & Michigan Southern Ry. Co.* case and cases therein cited, if plaintiff wishes to commence suit, he must exercise his election to end the contract and so notify the defendant. He cannot treat it as a broken contract and sue on it as such and, at the same time, elect to keep it in force by a payment of the premiums under protest. If he elects to keep it in force, he must wait until the death of the insured, as provided in the policy, and then bring his suit at that time for the entire damages. *Supreme Council A. L. H. v. Lippincott,* 134 Fed. 824. From the declarations before us, however, plaintiffs have not elected to recognize the breaches which they allege and rescind the contracts which action is a condition precedent to commencing the suit.

Nowhere in these various declarations do we find what is the item or measure of damages which the plaintiffs have sustained. The declarations do not set forth with sufficient particularity the elements of damage claimed by reason of defendant's alleged breach of the various contracts. The defendant is entitled to know by the pleadings the items which compose the entire sum claimed. Assuming for the moment that the defendant, by its officers, has mismanaged the internal affairs of the company, as alleged in the declaration, and depleted the fund of the company, does it follow that the plaintiffs, as the insured, would be entitled to individual damages for their action? Of what does their damage consist? The declarations state a premise, but there does not seem to be any logical deduction or conclusion drawn therefrom when it comes to alleging the measure of damages and the items that compose it.

We are of the opinion that the declarations are uncertain as to what the damages consist of and are also demurrable because they do not state that they rescind the contract after its breach by the other party and elect to collect their immediate damages. For the reasons herein set forth we think the court properly sustained the demurrers to the declarations and that the plaintiffs electing to stand by said declarations, it was proper to dismiss the same with costs against the plaintiffs. It is, therefore, ordered that the judgment and order of the superior court be and they are hereby affirmed.

*Judgment and order affirmed.*

HALL, P. J., and HEBEL, J., concur.