## W. E. Banik, Appellee, v. Bishop-Stoddard Cafeteria Company, Inc., Appellant.

### Gen. No. 9,127.

Opinion filed January 18, 1937.

GALBRAITH & MONK, of Peoria, for appellant.

JOHNSON & POTTER, of Peoria, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This is an action brought by W. E. Banik against Bishop-Stoddard Cafeteria Co., Inc., an Iowa corporation, and Cyril Kegler, its president, to recover damages for an' alleged breach of contract. The declaration consisted of the common counts, to which the defendants filed the general issue and two special pleas. One special plea alleged that the several supposed promises set forth in the declaration were not

evidenced by any writing signed by the defendants and therefore were within the statute of frauds; the second special plea averred that the supposed promises set forth in the declaration were without any consideration and therefore void. The issues formed by these pleadings were submitted to a jury and at the conclusion of plaintiff's evidence he, the plaintiff, dismissed his suit as to the defendant Kegler. At this time and also at the close of all the evidence, the defendant moved for an instructed verdict. Both motions were denied and the jury returned a verdict finding the remaining defendant, Bishop-Stoddard Cafeteria Company, guilty and assessing "the plaintiff's damages at $758.00 and legal rate of interest from November 8, 1932." The court denied motions of the defendant, for judgment notwithstanding the verdict, in arrest of judgment and for a new trial, but ordered a remittitur of $350 and interest, which the plaintiff entered and thereupon judgment was rendered in favor of the plaintiff and against the defendant for $408 and costs of suit, and from that judgment an appeal has been prosecuted to this court.

An examination of the record discloses that at the beginning of the trial it was stipulated by counsel that this suit was instituted to recover $678 damages for breach of an alleged contract, said amount of $678 being the difference between the alleged contract price of 48 shares of the preferred stock and 54 shares of the common stock of the defendant corporation, which the plaintiff claims the defendants agreed to purchase, but which they did not purchase, and the actual sale price for which said preferred and common stock was sold by the plaintiff. The stipulation is further that the breach of the alleged contract consisted of the failure of the defendants to accept and pay for the stock in question. The evidence discloses that what is spoken of in the record as a unit of this stock was two shares

of preferred stock and one share of common stock. Appellee therefore owned twenty-four units and in addition thirty shares of common stock. On October 26, 1932, appellee was discharged from his position as manager of appellant's Peoria cafeteria, a position which he had held for some time, and being desirous of selling his stock had a conversation with Kegler on either November 1st or 2nd, 1932. According to appellee's testimony, Kegler, as a representative of appellant, told him to send his stock in to the company, and that appellant would purchase it at $42 per unit. Kegler does not deny this but further testified that appellant was desirous of maintaining the good will of appellee toward appellant's cafeteria in Peoria and its offer to purchase appellee's stock was made with the understanding that appellee would ''maintain his good will toward the Bishop-Stoddard Cafeteria in Peoria.'' Appellee denied that as a part of the stock transaction anything was said by either party with reference to appellee not saying or doing anything detrimental to appellant's good name and denied that he had started any rumors about why he was discharged or that he had not at all times ''maintained his good will toward the cafeteria.'' On November 8, 1932, appellee wrote Kegler in which he stated: ''Upon thinking over our conversation in regard to my stock with the Bishop-Stoddard Cafeteria Co., I have decided to turn it in. I feel that I am going to need the money, so as per your agreement will accept the $42.00 per unit. According to my checking I have forty-eight preferred and fifty-four common, how does this check with your records? How do you want to handle this, do you wish the stock mailed in or handled through the bank here, or wait until you are over here again?'' On November 18, 1932, appellant's president replied to this letter stating that his delay in answering was caused ''by various rumors of a very disturbing nature that we have been

investigating before fulfilling our part of the stock bargain.'' This letter concluded by stating that the writer would drop appellee a line or see him personally within a couple of weeks and expressing the hope that in the meantime appellee would be successful in relocating himself. Thereafter appellee drew a sight draft on appellant, to which he attached his certificates of stock and deposited the same in his local bank for collection. Appellant did not accept the draft and it and the accompanying certificates of stock were returned to appellee. On November 28, 1932, Kegler, as president of appellant, wrote appellee as follows: ''We are not able to understand receiving notice from the bank this morning of a sight draft being received there with your stock attached. I am sure that we had a clear understanding when and how this was to be handled. This idea of forcing the issue in this manner is very vividly a further indication that you do not intend to deal with us fairly and squarely. We have been aboveboard in every move with you in this deal, and no one on earth can say that you were not treated with more than fairness, especially toward one being discharged for incompetency. Your tactics, assuming the attitude that they do, of clearly indicating unwillingness to cooperate, has altered our side of the deal considerably. A decision of the Executive Committee this morning carries instructions to me to herewith withdraw our offer to purchase your stock. You may get in touch with Scott McIntyre Co., Merchants National Bank Building, this city, if you desire to dispose of it. It is indeed regrettable to us that our efforts to have a happy parting of the ways has not met with like desire and action on your part.''

Thereafter and on January 5, 1933, appellee sold his stock in the appellant company through N. L. Rogers and Company, brokers of Peoria, Illinois, to Scott, McIntyre and Company of Cedar Rapids, Iowa. The

sale was in two lots, one lot consisting of 24 units which was sold for $25 per unit and the other lot consisting of 30 shares of common stock which was sold for $5 per share, which the proof shows was the best available price at the time the stock was sold. Thereafter, on January 20, 1933, this suit was instituted, the trial being had in April, 1936.

The declaration consisted of the common counts and counsel for appellant insists that such a declaration will not support the judgment. The evidence discloses that this action is brought by the plaintiff to recover damages for a breach of an executory contract. The evidence is that appellant did not receive, accept or pay for any part of the stock and that no part of the alleged contract to purchase the stock was performed, but it remains wholly executory and that appellee instituted the suit to recover damages for breach of such contract. Counsel for appellee state that this is a proceeding to recover the difference between the contract price and the price appellee realized from the sale of his stock upon the market and insist that where the proof shows that one party to a contract has repudiated the contract, the injured party may treat the repudiation as putting an end to the contract for all purposes and sue under the common counts for the profits he would have realized. In support of this proposition, counsel cite Puterbaugh Common Law Pl. and Pr. (10th Ed.) 156 and the case of *Baker v. Stoner*, 213 Ill. App. 571.

"Indebitatus assumpsit will lie to recover the stipulated price due on a special contract, where the contract has been completely executed, so that only a duty to pay the money remains and the agreement may be read in evidence to show its terms and measure the damages. . . . The common counts can not be resorted to where there is a special contract, and the breach of the contract is the gravamen of the action. In such case the plaintiff must declare specially. . . . Where

there is a subsisting unexecuted agreement, indebitatus assumpsit will not lie. . . . Where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue any one of three remedies: He may treat the contract as rescinded, and recover upon quantum meruit so far as he has performed: or he may keep the contract alive for the benefit of both parties, being at all times ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract: or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. Where the injured party elects to keep the contract in force for the purpose of recovering future profits, treating the contract as repudiated by the other party, in order to sustain a recovery the plaintiff must allege and prove performance upon his part or a legal excuse for nonperformance. The common counts are sufficient, however, if the contract is treated as abandoned and the plaintiff claims no benefit from it.'' Puterbaugh Common Law Pleading and Practice, 10th Ed., pages 155–158. In support of the last two sentences, the author cites the case of *Baker v. Stoner, supra*. It appears in that case that the plaintiff sought to recover for labor and material furnished by him in building a dwelling house for the defendant. His declaration consisted only of the common counts, to which the defendant plead the general issue. The evidence upon the trial disclosed that the work had been begun and prosecuted under a written contract between the parties, but before the work was completed, the defendant had ordered the plaintiff to quit work and leave the premises and thereupon the plaintiff treated this action of the defendant as a repudiation of the contract and brought suit to recover for the labor and material

which he had furnished. It was contended by the defendant that there could be no recovery under the common counts but the court held that the plaintiff was entitled to recover the reasonable value of his labor and of the material furnished, less whatever sum had been paid him under the contract.

It will be seen that *Baker v. Stoner, supra,* was a suit to recover the reasonable value of the labor expended and material furnished the defendant by the plaintiff after the defendant had compelled the plaintiff to abandon his written contract and the Appellate Court properly held that under the authorities the plaintiff could so recover under a *quantum meruit* count. In the instant case appellee did not seek to recover what his shares of stock were reasonably worth, but sought to compel appellant to respond in damages for breaching its contract and the law is that *indebitatus assumpsit* will not lie where it appears there is a subsisting unexecuted agreement and where there is a special contract and the breach thereof is the gravamen of the action, the plaintiff must declare specially and the common counts cannot be resorted to. Puterbaugh Common Law Pl. and Pr., *supra.*

In Chitty on Pleading (12th Am. Ed. Vol. 1), 345–347, the author says: "In order to maintain a count for goods sold and delivered, it is essential that the goods should have been delivered to the defendant, or his agent or to a third person. . . . The common counts for goods sold can not be maintained and it is necessary to declare specially in the following cases: . . . 4thly. If there has been no delivery of the goods, even the count for goods bargained and sold (not showing a delivery) can not be maintained, unless it appear that there has been a complete sale and the property in the goods had become vested in the defendant by virtue of such sale, and an actual acceptance of the commodity by the defendant. . . . Where the defend-

ant refuses to receive goods which he has agreed to purchase, the special counts are not only necessary, if the property in some identical goods has not become vested in the defendant, but are at all events essential in order to recover any expenses which may have been incurred.''

*Brand v. Henderson*, 107 Ill. 141, was an action brought to recover the price of wheat, which the plaintiff, a broker, bought for the defendant. In its opinion the court set forth an instruction which the trial court had given and in commenting upon the same said: ''A recovery on the case stated in the instruction was not admissible under the common counts. The contract between the plaintiffs and defendants was never performed. It was entirely executory. The title to the wheat never vested in the defendants. In the case stated in the instruction no money was paid out by plaintiffs for use of defendants. There is no count for goods bargained, sold, and offered, but not received. For such a cause of action the count must be special. 'If there has been no delivery of the goods, even the count for goods bargained and sold (not showing a delivery) can not be maintained, unless it appears that there has been a complete sale, and the property in the goods had become vested in the defendant by such sale, and an actual acceptance of the commodity by the defendant.' (1 Chitty's Pleading, 347; *Seckel v. Scott*, 66 Ill. 106.) A tender of goods, or offer to deliver the same, is not sufficient, under such circumstances. The contract must be specially set out, and the damages can not be recovered under the common counts. (*Outwater v. Dodge*, 7 Cowen [N. Y.] 85, 87.) Where suit is for the recovery of damages for breach of contract, the count must be special. If he recovers, it is for the damages he has sustained by the breach of the contract. (*Burnham v. Roberts*, 70 Ill. 24.) It is only where the contract has been fully performed, and nothing remains

to be done but the payment of the money, that the common counts are applicable. (*Throop v. Sherwood,* 4 Gilm. 92.) 'In such a case as this the declaration should be framed specially on a contract for not accepting the goods, or for refusing to complete the bargain.' 1 Chitty's Pleading, 347, note.'' See also *Clause v. Bullock Printing Press Co.,* 118 Ill. 612; *Morris v. Jamieson,* 205 Ill. 87; *Thorn v. Danzinger,* 50 Ill. App. 306.

In the early case of *Rollins v. Duffy,* 14 Ill. App. 69, it was held that the common counts cannot be resorted to where there is a special contract and the breach of the contract is the gravamen of the action. In such cases the plaintiff must declare specially. ''When a special contract is open and unexecuted and the plaintiff proceeds for a breach of it, he must declare specially and set it out and aver a breach.'' *Moulton v. Trask,* 9 Metcalf 577. ''No recovery can be had upon an executory contract under the common counts.'' *Sergo v. Bloch,* 263 Ill. App. 198, and the contract, to recover for a breach of which this action was instituted, is an executory contract. *Ullmann v. Kent,* 60 Ill. 271, at page 273.

*Morris v. Jamieson, supra,* was an action on the common counts for money had and received. At the conclusion of the plaintiff's evidence a directed verdict for the defendants was returned upon which judgment was rendered. In affirming the judgment of the Appellate Court, which affirmed the judgment of the circuit court, the Supreme Court stated that the position taken by the defendants and evidently entertained by the trial and Appellate Courts was that the action could not be maintained under the common counts and if it could not be, then the trial court properly instructed a verdict for the defendants. In its opinion the court said: ''From the declaration, of course, it cannot be determined what the exact nature of the action was, but

looking to the evidence, or the case as the evidence tends to make, it shows an action for a breach of contract. . . . The evidence in this case not only did not tend to establish a cause of action for the plaintiff, but shows that under the declaration filed he had no cause of action, and the instruction for a verdict for appellees was properly given.'' So in the instant case, appellant, by its respective motions at the close of the evidence on behalf of the plaintiff and again at the close of all the evidence, moved the court for an instructed verdict and the record discloses that counsel for appellant, at the close of all the evidence, stated to the court that under the pleadings in this case, there can be no recovery by the plaintiff and that the court should direct a verdict for the defendant. In this state of the record, it cannot be said, as counsel for appellee contend, that the sufficiency of the declaration to support the judgment was not raised in the trial court. Furthermore, appellant's motion in arrest of judgment specifically stated that the declaration was insufficient in law to sustain this judgment.

The trial court erred in not directing a verdict at the close of appellee's evidence for appellant and for that error the judgment will be reversed and the cause remanded.