GEORGE F. MUELLER & SONS, INC., Plaintiff-Appellant, v. NORTHERN ILLINOIS GAS COMPANY, Defendant-Appellee.

(No. 60322;

First District (5th Division)—September 12, 1975.

J. Edward Jones, of Blue Island, for appellant.

Joseph J. Jares, Jr., of Chicago, for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order entered in favor of defendant, finding that plaintiff had failed to prove by a preponderance of the evidence that it had adequately performed its duties under a contract to install, service and maintain vending machines. This was the only issue unresolved following our former opinion in this matter (see *George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.*, 12 Ill.App.3d 362, 299 N.E.2d 601), wherein we held that a valid and binding contract existed between the parties and that the trial court had therefore erred in entering judgment for defendant on the grounds of formal defects in the contract. We remanded the cause so that the trial court might rule on defendant's remaining contention that plaintiff's action should fail because it did not prove it had adequately performed all the conditions of the contract. We briefly review the facts as they appear in the record and a bystander's report of the trial proceedings.

Plaintiff contracted to install vending machines at three of defendant's offices and to maintain and service said machines. Defendant was to receive a percentage of sales from the machines as a commission. Paragraph two of the agreement provided:

"After installations [*sic*] the Operator agrees during said period to maintain and service the above machines as often as the Proprietor notifies the Operator such maintenance and service is required and will keep said machines in proper operating condition when so notified. The Operator agrees during said period to keep said machines stocked with standard products sold through said machines. Proprietor agrees that the Operator shall not be in default unless and until the Proprietor has served a written demand on the Operator for maintenance, service or products."

The contract term began on November 17, 1969, and was to run for a period of three years. On April 8, 1970, defendant's employee (Mor-

phey) wrote plaintiff a letter, stating that the Company was "extremely unhappy with the vending machine service you are allegedly providing us" and that, despite telephone complaints to plaintiff and visits by plaintiff's representative, "conditions have not improved." The letter then listed numerous failings in plaintiff's service, including its failure to repair machines or to restock machines, its restocking of machines with stale food, the presence of cockroaches in one machine, and the fact that no commission on sales was paid from the inception of the contract. Morphey's letter further stated that written notice had been sent to plaintiff's representative (Smith) on February 20, complaining of stale rolls and candy, that the situation had not improved and that, in fact, one employee had recently purchased a roll which had become moldy. Defendant's letter concluded with a demand that plaintiff remove its machines from defendant's premises not later than April 15, 1970. Plaintiff responded in a letter, dated the following day, wherein he chose to treat the contract as remaining in full force and effect and either denied or promised to investigate each of defendant's complaints. A check for commissions was enclosed. No further communication between the parties appears to have occurred. Plaintiff then brought this action against defendant for breach of contract.

The record is devoid of a transcript of the original hearing. The parties, however, had submitted a bystander's record of the proceedings in the prior appeal which, however, is abstract, in form and very sketchy. In any event, we glean from it that plaintiff first called A. J. Morphy, defendant's division personnel director, who testified that he had received plaintiff's reply letter dated April 9, 1970, with the enclosed commission check. Thereafter, plaintiff called a number of its employees who testified as follows:

James Dorr, employed to service plaintiff's machines, said that he had serviced the accounts of defendant in its Palos and Crestwood Heights offices during the months of January, February and March of 1970; that he checked and filled the vending machines every other week; that the machines were in good mechanical condition and stocked with fresh new merchandise; and that he had not received any complaints on service.

Stanley Zych, a coffee routeman, said that he serviced machines at the same locations as Dorr; that the condition of the machines was good; that a machine at one location did not give proper change, but he continued to service that machine "until he found it disconnected."

Gary Metke testified that he serviced a candy machine and two cigarette machines at defendant's Glenwood location during a five-month period; that he had received complaints about empty machines which

he reported to the office; "that he was not told later that the complaints had not been remedied."

Ronald Hric, a coffee routeman, said that he serviced defendant's Glenwood location; that he had received complaints about the coffee machine which he reported to his home office; that "he was not told the complaints were not taken care of."

Richard Page, a repairman, said that he serviced machines in response to complaints at defendant's premises in Glenwood and Crestwood; that he had received no calls to service or repair machines at defendant's Palos Heights offices. He described his duties and stated that "each time he left a job site, the machine would be working."

Leland Smith, plaintiff's manager, said he had negotiated the contract in question and had discussions with Leland Schmitz, an employee of defendant, concerning a service plan. On cross-examination, Smith testified that through his office he received complaints from defendant and had visited defendant's employee (Morphey) concerning them. He stated that it was his understanding that defendant was to be paid its commissions monthly and that when he heard plaintiff might lose defendant's account, he went to their Glenwood office to discuss the matter. When the results of his visit there did not improve the situation, "he went to defendant's general office and asked to see the president, but he was referred to a vice-president with whom he discussed the problems." However, "he was unable to do any good."

Plaintiff then called Kenneth Schmitz as an adverse witness. He was the senior personnel representative at defendant's Glenwood office, and he testified that he had signed the contract for plaintiff's services; that he patronized plaintiff's machines and, while he characterized their operation as "mostly good," his office had received complaints concerning them at least once a day; that his secretary reported to him that between December 1 and April 17 at least 30 calls had been made to plaintiff for service in response to complaints by defendant's employees.

Joanne Prather, plaintiff's general office manager, testified that she had prepared a commission statement and computed the amount of the commission check tendered to defendant which was dated April 9, 1970. This check was in the amount of $260.42 and was apparently the first check received by defendant from plaintiff since the inception of the contract in November of 1969.

Archer Mueller, plaintiff's vice-president, testified that the company telephones were ringing continuously with customers' complaints; that plaintiff employed roving mechanics who were on the street at all times to service machines, including those at defendant's places of business; that "he himself had sent out a truck to pick up a machine and change

it" for defendant; that "he had purchased nine machines worth five to seven thousand dollars" for defendant's account; that there was a complaint that commissions had not been paid, and he directed that a check be prepared in payment thereof.

Defendant then recalled Kenneth Schmitz, signer of the contract, who denied that he ever had any authority to bind the Company to the contract, and this testimony was then corroborated by Mr. Morphy, the personnel director of defendant. The court then entered its ruling that because no authority existed by which Schmitz could bind defendant, the contract was unenforceable against defendant and further that it was unenforceable under the Statute of Frauds. On appeal, this court reversed that finding and, on remand, after reexamining its trial notes and after considering the argument of counsel for both parties, the trial court found that plaintiff had not substantially fulfilled his obligations under the contract and entered judgment for defendant. Plaintiff appeals this finding.

OPINION

The only question before this court is the correctness of the trial court's determination that plaintiff had not sufficiently fulfilled his contract with defendant. Such a determination, if correct, would bar plaintiff from any recovery; since, as stated in *Archibald v. Board of Education*, 19 Ill. App.2d 554, 561, 154 N.E.2d 867, 870:

> "It is a fundamental principle of the law that, in order for one to recover upon a contract, he must have performed his part of the contract."

Whether a contract has been performed according to its terms is a question of fact (*Ralph v. Karr Manufacturing Co.*, 20 Ill.App.3d 450, 314 N.E.2d 219), and this court will not disturb the trier of fact's determination unless the finding is against the manifest weight of the evidence or the verdict is unsupported by any evidence whatsoever. *Dorweiler v. Gleim*, 8 Ill.App.3d 190, 289 N.E.2d 471.

■■ Plaintiff, however, contends that under paragraph 2 of the contract it could not be held in default on the contract until it had received a written demand for maintenance, service or products from defendant, that the letter dated April 8, 1970, received from defendant was not a demand for performance but, rather, a notice of termination. Therefore, plaintiff argues that, absent a written demand, it could not be held to have defaulted on the covenants of the contract.

In this regard, we note that the April 8 letter of defendant's employee (Morphey) offered by plaintiff and admitted into evidence as its Exhibit 3, stated that a letter of complaint had been sent on February 20 regard-

ing stale candy and rolls and that the situation had not been remedied. Thus, it would appear from plaintiff's exhibit that a written demand for service had been made. In any event, the rule is well settled that a party cannot sue for breach of contract without alleging and proving that he has himself substantially complied with all the material terms of the agreement and where, following a breach by one party, the other party seeks to keep the contract in force and recover thereon, he must allege and prove performance on his own part or a legal excuse for nonperformance (*Banik v. Bishop-Stoddard Cafeteria Co.*, 288 Ill.App. 174, 5 N.E.2d 868; *Hutchison v. Bankers Life Co.*, 283 Ill.App. 77; 12 Ill. L.&Pr. *Contracts* § 452.) Thus, it has been said in *Christopher v. West*, 409 Ill. 131, 136, 98 N.E.2d 722, 725:

> "The party who insists upon performance by the other party must show performance on his part, while he who desires to rescind the contract need only show nonperformance or inability to perform by the other."

We believe plaintiff misconstrues the language of the contract. Regardless of the term "default" in the contract, we believe a plaintiff who seeks to enforce the contract must still sustain his burden of proving that he has substantially complied with all material terms of the agreement. We are of the opinion that the language concerning default looked toward the eventuality of a suit for rescission wherein a proprietor sues the machine vendor. The language of paragraph two would preclude a proprietor from rescinding the contract until he had made a written demand of the machine vendor for maintenance or service. Here, the suit is not brought by a proprietor seeking to rescind but, rather, by the machine vendor seeking to enforce the contract. As such, the general rule pertains which requires the plaintiff to establish its performance.

In the instant case, the trial court had before it plaintiff's Exhibit 3, the Morphey letter, which complained of the malfunctioning of plaintiff's machines, of their unsanitary condition, of plaintiff's failure to restock the machines, and of their being restocked with stale food. Plaintiff's reply letter contained only general denials of these charges or promises to investigate them. Additionally, defendant's employee (Schmitz) testified that he received at least one complaint per day about the machines. Plaintiff's vice-president (Mueller) testified that the telephones in his office were constantly ringing with customer's complaints and, although he testified that plaintiff employed roving mechanics to service its machines and that he did so for the machines installed on defendant's premises, he gave no specific instances of any servicing of defendant's complaint or examples of any service given defendant other than the fact that one machine had been exchanged.

Further, two of plaintiff's employees (Metke and Hric) testified that they received complaints from defendant concerning the machines and reported them to plaintiff's office, but could not testify as to whether these complaints had been remedied. Another of plaintiff's employees (Zych) testified that the machines he serviced were in good condition, even though his testimony also included a statement that one machine did not give proper change and had been disconnected. Furthermore, while plaintiff's employee (Dorr) testified that he serviced machines in Crestwood and Palos Heights and received no complaints, another of plaintiff's employees (Page) testified that he had in fact serviced machines at the Crestwood Heights location in response to complaints. Finally, it is undisputed that plaintiff did not tender defendant a check for the commissions accrued until after defendant had stated its intention to terminate the contract.

In summary, the evidence shows a number of complaints made by defendant concerning plaintiff's failure to fulfill its contractual obligations and, by contrast, reveals only a few general and contradictory denials of those allegations by plaintiff. These presented a question of fact which the trial court resolved in defendant's favor. From our review of the rather sketchy bystander's report of proceedings made available to us, we cannot say that the trial court's finding that plaintiff failed to perform its contractual duties is against the manifest weight of the evidence.

Accordingly, the judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.