In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-2990

RESERVE HOTELS PTY LIMITED, et al.,

*Plaintiffs-Appellants*,

*v.*

THEODORE MAVRAKIS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-07475— **Harry D. Leinenweber**, *Judge.*

ARGUED MAY 19, 2015 — DECIDED JUNE 23, 2015

Before POSNER, EASTERBROOK, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Nicolas Balagiannis and his company, Reserve Hotel PTY Limited, sued Theodore Mavrakis in the district court and in Greece for breach of contract arising from a failed business venture involving a casino. When Balagiannis failed to confirm his compliance with the terms of the settlement agreement, Mavrakis ceased making payments under the agreement, so Balagiannis sued to enforce it. The district court dismissed the suit for failure to state a claim. We affirm.

## I. Background

In the aftermath of a casino investment venture gone awry, Balagiannis and Mavrakis entered into a settlement agreement. Under the agreement, Mavrakis would pay Balagiannis $1.225 million; in exchange, Balagiannis would dismiss pending litigation in the district court with prejudice and "withdraw the Complaint he ha[d] filed against Mavrakis" in the Greek legal system no later than September 28, 2012. Mavrakis made three of five agreed payments, and in March 2012, Balagiannis sent a three-page letter to a district attorney in Athens. The letter did not expressly or generally reference withdrawal of the complaint against Mavrakis. Instead, it only requested "completion of the ongoing preliminary investigation." After Balagiannis refused to confirm that he had withdrawn the Greek complaint, Mavrakis declined to make the final two payments amounting to $925,000. In October 2013, Balagiannis filed this suit alleging that Mavrakis breached the settlement agreement. Mavrakis moved to dismiss on grounds that Balagiannis failed to allege that he had satisfied his own obligation to withdraw the Greek complaint. Three months later (and nineteen months after the September 28, 2012, date that withdrawal of the complaint was required under the settlement agreement), Balagiannis filed a declaration with the district court (dated March 4, 2014, and filed in Greece), which may (or may not) have withdrawn the complaint in Greece. The district court held that Balagiannis failed to allege plausibly his compliance with the settlement agreement, and dismissed the suit. Balagiannis timely appealed.

## II. Analysis

We will treat the district court's order as a judgment on the pleadings, which we review *de novo*. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998). Because settlement agreements are contracts, we look to state law for the rule of decision. *Newkirk v. Village of Steger,* 536 F.3d 771, 774 (7th Cir. 2008).

### A. Plausibility

Under Illinois law, a "party cannot sue for breach of contract without alleging … that he has himself substantially complied with all the material terms of the agreement." *George F. Mueller & Sons, Inc. v. N. Ill. Gas Co.,* 336 N.E.2d 185, 189 (Ill. App. 1975). Balagiannis argues that he substantially performed the terms of the settlement agreement because he did all that he could do to implement them. He points out that he dismissed the suit pending in the district court (over which there is no disagreement) but concedes that he was unable to provide assurance to Mavrakis that the Greek complaint was dismissed because the Greek legal system is inquisitorial (a critical fact here because it means that Greek authorities have no obligation to dismiss Balagiannis's suit, even if he sought to do so). Building on his concession, he contends that Mavrakis has not suffered any injury because he has not been subjected to any criminal or civil liability by any Greek court. For these reasons, Balagiannis argues that he has provided substantial performance under the settlement agreement and that Mavrakis should be required to continue making payments consistent with its terms.

There are two distinct problems with Balagiannis's argument. First, here at the pleadings stage, the issue is not whether Balagiannis substantially performed, but whether he has

pleaded substantial performance. The Supreme Court's decisions in "*Iqbal* and *Twombly* hold that a complaint must be dismissed unless it contains a plausible claim." *Bank of America, N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013). The district court concluded that Balagiannis failed to allege plausibly that he performed both conditions of the settlement agreement that were preconditions to its enforcement. *Balagiannis v. Mavrakis,* 2014 WL 3889064, at *2 (N.D. Ill., Aug. 8, 2014) (referring to the allegations in Balagiannis's complaint as "utterly implausible").

The only allegation in Balagiannis's complaint that concerns performance of his obligation to withdraw the Greek complaint is found at ¶ 30 and states that

> at the time the Settlement Agreement was signed, Mr. Balagiannis believed that he had requested that the Complaint against Mavrakis and his wife in Greece be withdrawn and that this in fact had occurred.

Notably, Balagiannis has not pleaded that he made an actual request to withdraw the complaint, but merely that he believed that he had done so. This distinction is key. One's beliefs about his performance in a commercial dispute are not the same as one's allegations about his actual performance. Rule 8 requires a "short and plain statement of the claim showing that the pleader *is* entitled to relief"—it does not sanction a statement that the pleader *believes* himself entitled to relief. The civil rules required Balagiannis to plead that he took some discrete action to withdraw his complaint in Greece. He did not do so. The consequence of Balagiannis's failure to assert that he withdrew the Greek complaint is that he failed to assert a plausible claim.

### B. Substantial performance

We conclude that Balagiannis failed to allege plausibly that he performed under the settlement agreement. This reason is wholly sufficient to affirm the district court. However, for the sake of completeness, we also address his substantial performance argument. Notwithstanding Balagiannis's defective pleading, he argues that he substantially performed here because: 1) the agreement calls for him to satisfy a pair of conditions; 2) he satisfied the first condition; and 3) he later learned that the second condition was beyond his control because the Greek legal system is inquisitorial.

So did Balagiannis substantially perform under the terms of the settlement agreement? Balagiannis contends so, but our colleague in dissent is more circumspect—his principal contention is not that Balagiannis should win, but that dismissal was premature. We respectfully disagree.

A party's enforcement action fails unless the would-be enforcer has first satisfied his obligations under the agreement. *W.E. Erickson Constr., Inc., v. Congress-Kenilworth Corp.,* 503 N.E.2d 233, 236–37 (Ill. 1986) (Under the doctrine of substantial performance, "all the essential elements necessary to the accomplishment of the purpose of the contract" must be alleged and proven). Based on the papers filed in this case, we know the following about Balagiannis's efforts towards his underlying obligations: we know that the settlement agreement required Balagiannis to withdraw his complaint against Mavrakis, and we know that he failed to do so because the three-page letter Balagiannis's lawyer sent to Greek authorities before September 28, 2012, does not mention withdrawal or any analogous mechanism that eliminates Mavrakis from the proceeding. *See* Doc. 26-3. Finally, we know that the belated

March 4, 2014, declaration Balagiannis filed with the district court—regardless of whether or not it withdrew the complaint in Greece—was filed nineteen months after the September 28, 2012, deadline in the settlement agreement.

On the basis of the information discerned from these papers, Balagiannis has not satisfied his obligations under the agreement, and his enforcement action must fail. Although our colleague in dissent contests the formalism of that determination, the district court did not need the benefit of an expert in Greek law to reach the conclusion that a letter which fails to mention anything about withdrawing a party from the case will not result in that party being withdrawn from the case. And while he faults us and the district court for failing to credit the belated March 4, 2014, declaration, the fact remains that if the district court had credited this declaration, it could have granted judgment on the pleadings for Mavrakis because it proves that Balagiannis did not substantially perform within the time frame contemplated by the settlement agreement.

In short, Balagiannis was required to deliver if he wanted Mavrakis's performance. If we were to agree with Balagiannis, he would be entitled to all the money promised in the settlement even though he admits he has not delivered (and cannot deliver) what Mavrakis wanted in exchange: peace of mind that no criminal prosecution in Greece would be forthcoming. Balagiannis could have avoided this conundrum if he had sought rescission in the district court on grounds that it was impossible for him to terminate the proceeding in Greece. But he did not, and it is not our responsibility to re-litigate this case for him.

### III. Conclusion

Balagiannis failed to allege that he complied with both conditions of the settlement agreement. Additionally, his pleadings show that he failed to substantially perform. Accordingly, we AFFIRM the judgment of the district court.

POSNER, *Circuit Judge*, dissenting. Balagiannis sued Mavrakis and others and the parties settled, agreeing that Mavrakis would pay $1.225 million to Balagiannis, who in exchange would release all his claims against Mavrakis and his wife. There were several claims, and it is uncontroverted that Balagiannis timely settled all but one—a complaint seemingly both criminal and civil in nature that he had filed with Greek prosecutorial authorities, who in response to the complaint had instituted an investigation. (Although both parties, though ethnically Greek, are American citizens, the fraud alleged by Balagiannis arose from transactions involving the stock of a casino located in Greece.) In 2012, after having paid $300,000 of the $1.225 million that he owed Balagiannis, Mavrakis refused to pay the rest on the ground that Balagiannis had not withdrawn the Greek complaint as promised. Balagiannis had written a letter to the Greek authorities in March 2012 that he says withdrew the complaint. Actually the letter just asked the authorities to expedite their investigation, which is the opposite of a request to dismiss. But Balagiannis may have thought (and for all we know may have been thinking correctly) that only when the investigation was complete would the criminal complaint be dismissed. He also says his Greek lawyer told him the letter would bring about the withdrawal of the Greek proceeding against the Mavrakises.

In 2013 Balagiannis brought the suit that is before us against Mavrakis for the $925,000 that remained of Balagiannis's $1.225 million contract claim. The following year, Mavrakis having moved to dismiss the suit for failure to state a claim, Balagiannis filed in the district court a statement that his (new) Greek lawyer had just submitted to the

Greek authorities unequivocally requesting termination of the Greek investigation of Mavrakis and his wife. The letter did not request termination of the other defendants, but said only that on the basis of additional information that Balagiannis had recently obtained he had concluded that Mavrakis and his wife "have no involvement and connection to the felonies of embezzlement, fraud and forgery committed against me" and therefore "I do not wish to legally sue Theodore Mavrakis and [his wife] and I will not attend as plaintiff against them," as distinct from four other defendants against "whom I wish to proceed with the prosecution to [*sic*] against them and [as to them] I will attend as the plaintiff."

For Balagiannis to prevail in his breach of contract suit against Mavrakis he had only to show that he had substantially performed his end of the bargain. *George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.*, 336 N.E.2d 185, 189 (Ill. App. 1975), citing *Christopher v. West*, 98 N.E.2d 722, 725 (Ill. 1951); *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004). The district judge nevertheless dismissed Balagiannis's suit with prejudice for failure to state a claim, primarily on the ground that the second letter had come too late, having been filed with the court more than four months after the complaint had been filed. The judge also cited a Greek source, cited by Mavrakis, for the proposition that as long as the Greek investigation continued against the four other defendants, it could not be terminated against any of the defendants.

Dismissal with prejudice was improper with the suit at such an early stage, see Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); cf. *General Electric Capital Corp. v.*

*Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997), given the abundance of factual issues raised by the parties' submissions to the district court—those issues could not be sensibly resolved without proceedings that the judge impatiently cut off. Whether Greek law would allow the investigation to be terminated against fewer than all the persons being investigated was an especially critical issue and surely merited the judge's consideration, which it did not receive. Another ignored issue of potential consequence was whether Balagiannis's first letter to the Greek authorities, despite its literal meaning—a meaning that may however have been the product of an imperfect translation from Greek into English—was a bona fide effort to terminate the criminal investigation of the Mavrakises. (The statement in the majority opinion that "the district court did not need the benefit of an expert in Greek law to reach the conclusion that a letter which fails to mention anything about withdrawing a party from the case will not result in that party being withdrawn from the case" could be thought to reflect a certain naïveté concerning the potential loss of meaning in translations.) And if not, the next issue requiring consideration was whether the second letter was such an effort, even though it reserved the right to urge that the criminal investigation of the Mavrakises' codefendants proceed. That issue too the judge ignored.

Still another ignored issue of consequence was whether, assuming that either one or both of the letters was a bona fide effort to call off the Greek investigatory hounds, the effort amounted to substantial performance by Balagiannis of his obligations under the settlement agreement. He did not promise in the settlement agreement to deliver "peace of mind that no criminal prosecution in Greece would be forth-

coming," as the majority puts it; he didn't agree to become an insurer. But he agreed "to withdraw the Complaint he has filed against Mavrakis and [his wife] in the Greek Action."

The phrase "withdraw the Complaint" could mean either "terminate prosecution of the complaint" or "ask the Greek authorities not to prosecute the complaint." If Greek law doesn't allow a private complainant to terminate the prosecution of a complaint against fewer than all the defendants, then a plausible interpretation of "withdraw the Complaint" is that Balagiannis was required only to tell the Greek authorities that he didn't want Mavrakis and his wife prosecuted—for he could not block the prosecution but could only ask that it be terminated. This interpretation would require Balagiannis to do only what Greek law allowed him to do. To interpret the contract to require him to do something the law didn't allow him to do, such as withdraw the complaint against all the defendants, would signify a mutual mistake by the parties concerning the applicable Greek law, see *Schaefer v. Wunderle*, 39 N.E. 623, 627 (Ill. 1895); 27 *Williston on Contracts* § 70:134 (4th ed., Westlaw database updated May 2015); *Restatement of Restitution* § 55, comment c; Eclavea et al., 12 Ill. Law and Practice, *Contracts* § 69 (Westlaw database updated May 2015), by agreeing to do something the law forbade. If there was no mistake, Balagiannis wouldn't have to rescind the contract for relief, as the majority suggests, because he had done all he could do—his performance though it might prove ineffectual had been substantial.

Further supporting this interpretation is Mavrakis's promise in the settlement agreement "to provide reasonable

cooperation in connection with Balagiannis' claims against the remaining parties in the Greek Action." Since Balagiannis is not asking that his Greek complaint be dropped against them as well as against the Mavrakises, he did not harm Mavrakis and so did not breach his contract; "reasonable cooperation" would require Mavrakis to accept Balagiannis's interpretation of Greek law as not requiring Balagiannis to obtain the dismissal of all the defendants in order to obtain the dismissal of just the two Mavrakises.

Balagiannis's lawyer told us at oral argument that his client would not resist being ordered to return some portion of the damages to which Balagiannis would be entitled had he managed to withdraw the Greek complaint early on. The concession appears in amplified form in his brief, which states that "Balagiannis and Reserve [his company, a coplaintiff] are entitled to maintain their claim against Ted [Mavrakis] for his failure to pay the $925,000 that remains due under the Settlement Agreement, *subject to any damages that Ted [Mavrakis] can prove that were caused by Balagiannis failing to timely withdraw the claims against Ted and his wife in the Greek Complaint*" (emphasis added).

The majority opinion states that the delay makes Balagiannis's second letter ineffectual, but doesn't explain why damages cannot remedy any harm that the Mavrakises suffered from the delay. The Illinois courts have ruled that "mere delay in the performance of a building contract will not defeat the right of the contractor to collect the contract price." *Ahmer v. Peters*, 149 N.E.2d 503, 506 (Ill. App. 1958), quoting *Walsh v. North American Cold Storage Co.*, 103 N.E. 185, 188 (Ill. 1913); see also *Israel v. National Canada Corp.*, 658 N.E.2d 1184, 1190 (Ill. App. 1995). Why should the result be

any different in this case? The Mavrakises haven't been prosecuted yet, so even a delayed withdrawal may spare them any consequences from Balagiannis's delay in endeavoring, in his second letter, to make clear his desire that the Greek authorities terminate their investigation of the Mavrakises.

The result of a trial—even perhaps of summary judgment proceedings—might well be a finding that the Greek investigation is dead in the water. Indeed, since the Greek authorities have not brought the Mavrakises to trial in the six years since Balagiannis filed his Greek claims, or so far as appears done anything else to suggest a live investigation and expectation of an eventual trial, it is unlikely—it may in fact be out of the question—that the couple will ever be prosecuted in Greece. (Would Greece even request their extradition, and if so would the United States honor the request?) To determine that possibility would require evidence from experts on Greek criminal procedure who—whether Greek or American—are knowledgeable about the extraordinary current strains on the Greek government as a result of Greece's dire financial straits, which have produced a bitter conflict between that government and the European Union's financial authorities plus the nation's numerous importunate creditors.

If indeed the investigation will not result in a prosecution, Balagiannis is entitled to the promised $925,000 minus any damages that delay has imposed on the Mavrakises. Should it be impossible to determine the fate of the investigation or to assess damages that the investigation's continued existence, limbo-like though it is, is imposing on the Mavrakises, an alternative remedy might be to require them

to place the $925,000 that they may ultimately be determined to pay Balagiannis in escrow (where it would earn interest) for a period of say three years. If at any time during that period the investigation was definitely closed, the money, including any accrued interest, would go to Balagiannis. Otherwise it would stay with the Mavrakises.

All that is clear at this stage is that the suit has been dismissed prematurely and therefore that the dismissal should be reversed and the case remanded to the district court for evidentiary proceedings.

I want in closing to remark a general issue of federal practice that this case illustrates. Recall that the district judge's main reason (mysteriously ignored in the majority opinion) for dismissing Balagiannis's suit was his four-month delay in filing the second letter. The second letter is crucial to his case. I find myself increasingly uncomfortable with basing dismissals with prejudice on harmless procedural bobbles. The only argument in favor of such summary justice that I can imagine is that by punishing parties for their lawyers' mistake we improve the quality of the bar; the lawyers who disserve their clients attract fewer new clients and eventually perhaps are forced to leave the practice—an example of the positive effect of competition on the quality of goods and services that a market provides. But while this is plausible in theory, I have to say that in more than 33 years as a federal court of appeals judge I have not noted any improvement in the average quality of the lawyers who appear before us. I find it difficult to believe that punishing Balagiannis and his lawyer by in effect a "fine" of $925,000 will promote the quality of legal representation in the courts of this circuit.